705 So.2d 724 (1997)
Alana SUDWISCHER
v.
ESTATE OF Paul C. HOFFPAUIR, et al.
No. 97-C-0785.
Supreme Court of Louisiana.
December 12, 1997.
Rehearing Denied January 30, 1998.
*725 Stephen A. Stefanski, Edwards, Stefanski, Cunningham, Stefanski & Zaunbrecher, Crowley, for Applicant.
John F. Craton, Crowley, for Respondent.
VICTORY, Justice.
We granted a writ in this filiation case to determine whether the burden of proof found in La.C.C. art. 209, which requires that a child prove filiation to a deceased parent by clear and convincing evidence while requiring that a child only prove filiation to a living parent by a preponderance of the evidence, is procedural and thus retroactive, and whether the heightened burden of proof for one class of illegitimates violates the equal protection clause. Upon reviewing the record and the applicable law, we affirm the judgment of the appellate court and hold that the clear and convincing standard is retroactive and constitutional and that plaintiff has not proven filiation by clear and convincing evidence.

FACTS AND PROCEDURAL HISTORY
Plaintiff, Alana Sudwisher, filed this action against the estate of Paul Hoffpauir on March 26, 1981, claiming to be the biological child of Paul Hoffpauir under newly enacted Civil Code Article 209 and thus entitled to a portion his estate. Hoffpauir died in 1979, survived by his wife Rosemary Wright Hoffpauir, to whom he had been married since 1933, and two legitimate children, Rosemary and Paul Jr.
Alana was born in September of 1951. Her biological mother, Joyce Moore, died in 1968. At the time of Alana's conception, Joyce was married to Davis Benoit who is listed as Alana's father on her birth certificate. Joyce and Benoit were divorced in June of 1951. Joyce had two other children, Brenda and John, during the time she was married to Benoit. Alana claims that her birth was the result of an adulterous and secret affair between her mother and Hoffpauir and that as Hoffpauir's child, she is entitled to a portion of his estate.
*726 At trial, Alana testified that in late 1969, she met with Hoffpauir at a motel in Rayne, Louisiana where Hoffpauir told Alana that he had had an ongoing relationship with Alana's mother for many years and that he was her father. She further testified that from 1969-1971 he would visit her, sometimes daily, and that about 15-20 times she went to his house when his wife and children were away. She then moved out of town and testified that she saw Hoffpauir only one other time, which was after he had suffered a stroke in 1971 and was bedridden. She testified that Hoffpauir's wife let her into Hoffpauir's room to visit him. Hoffpauir died in 1979.
Two of Alana's aunts testified that in 1951 Hoffpauir visited Joyce several nights a week and gave her money for support. One aunt, Betty John, testified that Hoffpauir told her that Joyce was pregnant with his child and asked the aunt to move in with Joyce and take care of her. She testified that Hoffpauir would visit Alana when she was a newborn baby, and that later when Alana's baby son died, Hoffpauir gave them money to pay for the funeral. The other aunt, Doris Pendracky, testified by deposition that Hoffpauir told her Alana was his child, gave her money to pay Joyce's hospital bill when Joyce had Alana, and visited Joyce at home four or five times after she had Alana. Joyce's neighbor, Marie Gaspard, also testified by deposition that Hoffpauir visited Joyce often for two or three years and when Joyce was pregnant with Alana, Hoffpauir told her the baby was his. Alana's brother-in-law, Lee Bertrand, testified that Alana introduced Hoffpauir as her father and that Hoffpauir verified this by standing up. Alana also offered the deposition testimony of Hoffpauir's nurse, Doris Wiggins Adcock, who cared for him after his stroke who testified that when she asked him how many children he had, he said "two this side of the track and two on the other side."
Finally, Alana offered the results of a court-ordered DNA blood test between Alana, John, Brenda, and the legitimate child of Hoffpauir, Rosemary. John and Brenda were born during Joyce's marriage to Benoit and neither has instituted proceedings claiming to be the child of Hoffpauir. The experts testified that because Hoffpauir himself was not tested, the test could not show positively whether Alana was Hoffpauir's child. The results showed that out of eight genes tested, Alana and Rosemary matched on seven out of those eight genes which plaintiff's expert testified meant that Alana and Rosemary had a significant probability of being related. In fact, he testified in his deposition that the chances of them matching as they did and not being related was 1 in 24,000. However, surprisingly, the results showed that Brenda also matched Rosemary seven out of eight times and John matched Rosemary six out of eight times. This showed that Brenda and John also had a significant probability of being related to Rosemary, although John less so than Brenda. However, the experts eliminated the possibility that all of the people tested were fathered by Hoffpauir because the results found on gene 8 showed that John, Brenda and Alana could not all have the same father. Defendants' expert testified that based on the number of matches between the four people, there could be some relationship between the four people other than Rosemary and Alana sharing the same father.
The defendants presented evidence that Hoffpauir was a well-known and prosperous rice farmer and devoted father and husband with neither the time nor the inclination to become engaged in such an affair. Friends and relatives of Hoffpauir testified that he had never mentioned that he had an illegitimate daughter and that they never saw Hoffpauir and Alana together. Hoffpauir's wife testified by deposition that she was never present when and if Alana ever came to visit Hoffpauir after he had his stroke, which directly contradicted Alana's testimony that Hoffpauir's wife let her into Hoffpauir's room. Hoffpauir's son, Paul Jr., testified that from approximately August, 1950 through August, 1951, Hoffpauir's father, suffering with cancer, was living with Hoffpauir and his family, and that Hoffpauir was his father's primary care giver at night. He testified that Hoffpauir was at home every night to administer medicine to his father. This contradicts the testimony offered by Alana that in 1951, Hoffpauir was visiting Joyce several nights a week.
*727 Based on the above evidence, the trial judge ruled in favor of the defendants finding that "although it may be possible that the events occurred as described by the plaintiff, and that it may even be probable, but it certainly was not clearly and convincingly established." The court of appeal affirmed, holding that the trial court correctly applied the clear and convincing standard of La.C.C. art 209 retroactively and that the trial court was not manifestly erroneous in finding that plaintiff failed to meet that standard. Sudwischer v. Estate of Hoffpauir, 96-1312 (La. App. 3d Cir. 3/5/97), 692 So.2d 590. The court of appeal also found that the clear and convincing standard of La. C.C. art. 209 was not violative of the equal protection clause. Id. We granted a writ to consider the correctness of these rulings. Sudwisher v. Estate of Hoffpauir, 97-C-0785 (La.5/16/97), 693 So.2d 786.

DISCUSSION

A. Retroactivity of Civil Code Article 209
Prior to 1980, illegitimate children[1] had very limited rights regarding the successions of their alleged parents. For example, illegitimate children were prohibited from participating in the intestate succession of their father if the father was survived by legitimate descendants, ascendants, collateral relations, or a spouse, pursuant to article 919 of the Louisiana Civil Code. In 1980, this Court declared article 919 unconstitutional in that "[t]he distinction drawn by art. 919 between these acknowledged illegitimates and all other relations of the decedent is arbitrary, capricious, and unreasonable." Succession of Brown, 388 So.2d 1151 (La.1980).
More on point, Civil Code Article 1493 excluded illegitimate children from the right of forced heirship. As in Brown, we held that article 1493 was unconstitutional in that it denied illegitimates a right of forced heirship in the intestate succession of their parent while granting the same right to legitimate children. Succession of Clivens, 426 So.2d 585 (La.1982). In 1981, Article 1493 was amended to give illegitimates the same right of forced heirship as illegitimates.
Thus, prior to 1980, Alana had no forced heirship rights to Hoffpauir's estate, even if she could prove filiation, as the courts and the legislature gave little consideration to the rights of illegitimates.
Since 1980, the code articles on filiation have been amended several times.[2] At the time Alana's suit was filed, Article 209 had been rewritten by Acts 1980, No. 549, § 1, effective July 23, 1980, to set up a procedure by which unacknowledged children could prove filiation entitling them to share in their father's succession by providing, in pertinent part:
Art. 209. Methods of proving filiation:
1. An illegitimate child may be entitled to a rebuttable presumption of filiation under the provisions of this article. Or any child may establish filiation, regardless of the circumstances of conception, by a civil proceeding instituted by the child or on his behalf in the parish of his birth, or other *728 power venue as provided by law, within the time limitation prescribed in this article.
* * * * * *
4. A child of a man may prove filiation by any means which establish, by a preponderance of the evidence, including acknowledgment in a testament, that he is the child of that man. Evidence that the mother and alleged father were known as living in a state of concubinage and resided as such at the time when the child was conceived creates a rebuttable presumption of filiation between the child and the alleged father.
In 1981, Article 209 was again amended by Acts 1981, No. 720, § 1 to provide in pertinent part:
Art. 209. Proof of filiation.
A. A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation by a preponderance of the evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this Article.
In 1982, Article 209 was again amended by Acts 1982, No. 527, § 1 in pertinent part as follows:
Art. 209. Proof of filiation.
A. A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation as to an alleged living parent by a preponderance of the evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this article.
B. A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation as to an alleged deceased parent by clear and convincing evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this article.
Plaintiff argues that the trial court and court of appeal were in error in applying the 1982 amendment to Civil Code Article 209, increasing the burden of proof to clear and convincing evidence as to a deceased parent, because the retroactive application took from plaintiff her substantive existing right to prove her case by a preponderance of the evidence.
Article 6 of the Louisiana Civil Code directs as follows:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
Although La. R.S. 1:2, which provides that "[n]o section of the Revised Statutes is retroactive unless it is expressly so stated," appears to conflict with C.C. art. 6, La. R.S. 1:2 has been limited to apply only to substantive and not procedural or interpretive legislation. Manuel v. Louisiana Sheriff's Risk Management Fund, 95-0406 (La.11/27/95), 664 So.2d 81, 86; St. Paul Fire & Marine Insurance Company v. Smith, 609 So.2d 809, 816 (La. 1992); Lott v. Haley, 370 So.2d 521 (La. 1979).
Accordingly, in determining whether the clear and convincing standard of C.C. art. 209 is to be applied retroactively, we must engage in a two part inquiry. The first step involves determining whether the Legislature expressed an intent concerning the retroactive or prospective application of the law. If the Legislature expressed such an intent, the process is at an end and the law must be characterized as the Legislature intended. However, if no intent is expressed by the Legislature, we must discern the Legislature's intent and classify the law as either substantive, procedural or interpretative. Manuel, supra; Rousselle v. Plaquemines Parish School Board, 93-1916 (La.2/28/94), 633 So.2d 1235, 1244; St. Paul Fire & Marine, supra; Segura v. Frank, 93-C-1271 (La.1/14/94), 630 So.2d 714; Cole v. Celotex Corp., 599 So.2d 1058 (La.1992).
The Legislature did not express an intent concerning the retroactive or prospective application of C.C. art. 209. Thus we must classify the law requiring clear and convincing evidence to meet the burden of *729 proof as to deceased parents as either substantive, procedural or interpretive. "Substantive laws are laws that impose new duties, obligations or responsibilities upon parties, or laws that `establish new rules, rights and duties or change existing ones.'" Manuel, supra at 86 (citing St. Paul Fire & Marine, supra at 817). "Interpretative laws are those which clarify the meaning of a statute and are deemed to relate back to the time that the law was originally enacted." Id. "Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws." Rousselle, supra at 1244; Segura v. Frank, supra.
This Court has held that a statute changing a burden of proof is procedural and is to be applied retroactively. Ardoin v. Hartford Acc. & Indem. Co., 360 So.2d 1331 (La.1978). In Ardoin, the burden of proof previously established by case law in medical malpractice cases as to all doctors was the "locality rule." At the time of trial, La. R.S. 9:2794, enacted in 1975, established the burden of proof as to specialists as "the degree of care ordinarily practiced by physicians or dentists within the involved medical specialty." This Court held that "[t]o the extent that the statute establishes a burden of proof in malpractice actions, it clearly should be characterized as procedural and therefore applied to pre-existing facts and relations."[3] 360 So.2d at 1339; see also Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 182 (5th Cir.1990) ("[i]t is well settled in Louisiana that laws affecting burden of proof are `procedural' as that term is used in Civil Code article 6.")
Likewise, the change in the burden of proof from preponderance of the evidence to clear and convincing falls under the definition of a procedural law in that it prescribes a method for enforcing a substantive right. The substantive right is the right of an illegitimate to prove filiation to a parent, living or deceased.[4] The method of enforcing that substantive right, by proving filiation to a deceased parent by clear and convincing evidence, is procedural.
However, procedural laws are not accorded retroactive effect where such retroactivity would operate unconstitutionally to disturb vested rights. Lott v. Haley, supra at 523. In Lott v. Haley, we held that where the retroactive application of a newly enacted statute of limitations would operate to eliminate plaintiff's vested right to sue on his pre-existing cause of action without providing a reasonable period following its enactment to assert his claim, such statute could not be applied retroactively. Id. To the extent that plaintiff argues that she had a vested right to prove her case by a preponderance of the evidence at the time the suit was filed, we disagree. The retroactive application of a higher burden of proof does not eliminate plaintiff's vested right to prove filiation, it merely imposed a different, though reasonable, burden of proof. In addition, this Court has held that a party "has no vested or absolute right in procedural matters." State v. Clark, 340 So.2d 208, 220 (La.1976) (the elimination of a right to a directed verdict of acquittal to a defendant who either elects to be tried by jury or who is compelled to be tried by jury because he is charged with a capital offense does not constitute a denial of equal protection or due process rights).
On three occasions, this Court has commented on whether the clear and convincing standard of Article 209 is to be applied retroactively, albeit in dicta. In the case at bar, this Court reversed the trial court's denial of Alana's motion to compel the DNA testing of Rosemary's blood. Alana Sudwischer v. Estate of Paul Hoffpauir, 589 So.2d 474 (La. 1991) (on rehearing). In that opinion, we stated that "Alana's statutory burden of proof is `clear and convincing evidence.'" Id. *730 That Alana had the heightened burden of clear and convincing evidence rather than a preponderance of the evidence was a factor in deciding to allow the DNA testing.
In Chatelain v. State, DOTD, 586 So.2d 1373, 1382, n. 10 (La.1991), we stated in a footnote that the clear and convincing standard of Article 209 "has been held to be procedural and therefore applicable to cases that are tried after the amendment." Chatelain presented an unusual fact situation in that the mother of the decedent brought a wrongful death and survival action wherein her right to recover was dependant on the decedent having no surviving spouse or children. The defendants, the driver of the car involved in the accident, his insurer and the DOTD, alleged that the mother could not recover because the decedent was survived by a daughter who was legitimated by the decedent under Article 198. Legitimation under Article 198 requires marriage subsequent to the child's birth and formal or informal acknowledgment of the child by the parent but does not specify the burden of proof for legitimation. This Court adopted the clear and convincing standard of Article 209 as the standard for legitimation under 198 when the alleged parent is deceased. 586 So.2d at 1380.
Plaintiff argues that we hinted that a change in the burden of proof of Article 209 may be substantive in Succession of Bartie, 472 So.2d 578 (La.1985). In that case, three alleged illegitimate children sought to enforce their forced heirship rights by establishing filiation under Article 209. The suit was filed in 1980, when the burden of proof was the preponderance of the evidence standard, but the trial was not held until 1984, when the burden had been changed to clear and convincing. The trial court held that the plaintiffs had met their burden of proof by a preponderance of the evidence. The defendants sought a new trial, arguing that the trial court should have applied the clear and convincing standard. In response, the plaintiffs agreed that the proper standard was the clear and convincing standard. The trial court denied the motion for new trial. This Court affirmed, finding it was of no consequence what standard applied because the plaintiffs had met the clear and convincing standard. 472 So.2d at 582. However, we commented as follows:
Defendants contend that the trial judge was wrong in this regard and that "clear and convincing" is the appropriate standard of proof. Plaintiffs, perhaps too generously, concede as much, but contend that the evidence supports the finding that they have proven their filiation to Henry Bartie by "clear and convincing" evidence. It is not at all certain, however, that "clear and convincing" is the appropriate standard to apply in this case. Arguably, at least, the amendment to La. C.C. art. 209 in 1982, after plaintiffs filed this lawsuit, increasing plaintiffs' burden in the proof of filiation, is substantive in its effect upon plaintiffs, rather than procedural, and as such, should not be applied retroactively. See Pounds v. Schori, 377 So.2d 1195 (La. 1979); Spaht, Persons, Developments in the Law, 1980-1981, 42 La.L.Rev. 404, 409-410. Nonetheless, we need not resolve that legal issue here, for on the record before us we determine that plaintiffs have established their filiation to Henry Bartie by clear and convincing evidence.
Id.
Not only is this comment expressly dicta, but the case on which it is based is distinguishable. In Pounds v. Schori, this Court refused to retroactively apply Act 430 of 1976, which made significant changes to the law affecting disavowal of persons born during legal marriage, and instead applied the law in effect at the time the disavowal suit was filed.[5] The pre-existing law required that the father file his disavowal suit within 6 months of the birth of the child, which we held to be a preemptive period which could not be interrupted or suspended. Because the father did not timely file his suit under the pre-existing law, his disavowal action was dismissed. 377 So.2d at 1198. In *731 refusing to apply the new disavowal law retroactively, we reasoned that "[t]he status of an individual born during marriage, and entitled to the presumption of legitimacy, is a matter of substance of the utmost import considering it involves not only legitimacy but the right of inheritance." Id. In holding that the period created by Art. 191 was peremptive, we stressed our "traditional and historical position of zealously guarding and enforcing the presumption of legitimacy." Id. at 1200. Thus, in effect we found the child's presumption of legitimacy and right to be free from a disavowal action after six months from her birth to be an important substantive right.[6] This is not comparable to a change in a burden of proof wherein an illegitimate child is not losing her right to prove filiation to a deceased parent, which is indeed a substantive right, but merely is held to a different standard of proof.
For the reasons previously stated, we now hold that the 1982 amendment to Article 209 changing the burden of proof of filiation to a deceased parent to clear and convincing evidence is procedural and applies retroactively to this filiation action. Thus, we turn to the claim that the lower courts were manifestly erroneous in holding that plaintiff failed to meet that burden.
The Comments to Article 209 indicate that "[p]roof of filiation may include, but is not limited to: `Informal' acknowledgment; scientific test results; acknowledgment in a testament; and proof that the alleged parents lived in a state of concubinage at the time of conception." In this case, the proof includes evidence of "informal" acknowledgment and DNA test results. We have discussed the type of evidence that courts have considered in discussing informal acknowledgment as follows:
In discussing informal acknowledgment, appellate decision have generally referred to the standards set forth in the original Article 209 for proving paternity, such as the alleged father's acknowledgment of the child in formal writings or in public or private conversations, causing the education of the child as his own, and living in concubinage with the mother in his home at the time of the child's conception. Other conduct which has been considered to constitute informal acknowledgment by the alleged father includes rearing the child in his home, naming the child in his will, giving the child his surname, and holding the child out in the community as his own. Keene, Irregular Successions in Louisiana, 7 Loy. L.Rev. 94, 102-3 (1954), and cases cited therein. Moreover, courts have been reluctant to recognize an informal acknowledgment for purposes of filiation unless the father has recognized the child as his own unequivocally and on several occasions. Succession of Vance, 110 La. 760, 34 So. 767 (1903) (one statement by the alleged father that the doctors were wrong in predicting his children be afflicted because Eliza James was "as healthy as anybody" did not "suffice to invest [James] with the title of a legally acknowledged ... child"); Succession of Corsey, 171 La. 663, 131 So. 841 (1930) (statements by the alleged father acknowledging Ethel Casson as his child at various times to various parties constituted acknowledgment); Succession of Matte, 346 So.2d 1345 (La.App. 3rd Cir.1977) (an informal acknowledgment of filiation must be unequivocal and sufficiently frequent so that there is little doubt the alleged father truly believed he was the father of the child).
Chatelain v. State, DOTD, supra at 1379. We agree that, in the absence of other evidence, acts by the father recognizing the child as his own must be unequivocal and frequent to constitute an informal acknowledgment. This is particularly so when the illegitimate must prove filiation by clear and convincing evidence such that the actions by the alleged father must be of such frequency that the trier of fact is convinced that paternity is "highly probable, i.e. much more probable than its non-existence." Id. In this *732 case, we agree with the lower courts that the plaintiff failed to present evidence of actions by Hoffpauir which were unequivocal and of sufficient frequency to constitute an informal acknowledgment under the clear and convincing standard of proof.
However, plaintiff presented other evidence, i.e. DNA test results. Here, the trial judge described the expert testimony surrounding the DNA test results in this case as "ambiguous at best" and we agree. While the tests do show a high probability that Alana and Rosemary are related in some way, they also show a high probability that John and Brenda are also related to Rosemary. Considering that both parties' experts agreed that the testing showed that all four could not have shared the same father, and considering that all four did not share the same mother, it is difficult to ascribe much weight to the test results but to say that all four are in some way related. However, the DNA tests do not clearly and convincingly prove, along with all the other evidence, that Hoffpauir was Alana's father.

B. Constitutionality of Civil Code Article 209
Plaintiff's last assignment of error is that by the amendment to Civil Code Article 209, the legislature created two classes of illegitimates, giving one class a higher burden of proof than the other, depriving that class of illegitimates of constitutional rights under the equal protection clause. Plaintiff argues that given the availability of scientific DNA technology, there is no rational reason for discriminating among the classes of illegitimates.
The equal protection clause of the Fourteenth Amendment of the United States Constitution and Article 1, § 3 of the Louisiana Constitution provide that no person shall be denied equal protection of the laws. Although classification based on illegitimacy are not "suspect" or subject to "strict scrutiny" under equal protection analysis, the scrutiny applied to them "is not a toothless one...." Succession of Grice, 462 So.2d 131, 133 (La.1985); Trimble v. Gordon, 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977); Mathews v. Lucas, 427 U.S. 495, 96 S.Ct. 2755, 49 L.Ed.2d 651 (1976). Such classifications are unconstitutional unless they are substantially related to permissible state interests. Succession of Grice, supra; Pickett v. Brown, 462 U.S. 1, 103 S.Ct. 2199, 76 L.Ed.2d 372 (1983); Lalli v. Lalli, 439 U.S. 259, 99 S.Ct. 518, 58 L.Ed.2d 503 (1978). Thus we must determine whether the requirement that an illegitimate child prove filiation to a deceased parent by clear and convincing evidence is substantially related to permissible state interests.
Based on United States Supreme Court precedent, this Court has already concluded that "(1) the state has a substantial, permissible interest in providing for the just and orderly disposition of property at death where intestate paternal inheritance of illegitimate children is concerned, an area involving unique an difficult problems of proof, and (2) the means adopted by the state to further that interest may result in some inequity and still be constitutional, provided it is substantially related to that interest." Succession of Grice, supra at 134. We further concluded that the "substantial relation requirement will not be met if the statute inevitably and unnecessarily excludes some significant categories of illegitimate children." Id.
Thus, the only unresolved question is whether the means adopted by the state, i.e. the imposition of the clear and convincing standard as to deceased parents, is substantially related to the permissible state interest in providing for the just and orderly disposition of property at death. In Chatelain, this Court discussed the imposition of the higher standard of proof where the alleged parent is deceased as follows:
The requirement of proof by a clear and convincing evidence has traditionally been applied in cases in which there is a special danger of deception or in which the particular type of claim is disfavored on policy grounds. McCormick on Evidence, Sec. 340(B) (3d ed.1984); Succession of Lyons, 452 So.2d 1161 (La.1984).
It is logical that a higher standard of proof should be required for both filiation and legitimation when the alleged parent is *733 dead. Claims by an illegitimate child to the property of an alleged parent or to the status of a wrongful death beneficiary of the alleged parent, when not presented until after the death of the alleged parent, are replete with danger of fraud. As stated in Spaht, Developments in the Law, 1981-1982Persons, 43 La. L.Rev. 535, 537 (1982), in regard to proof of filiation, "[a]fter the death of the alleged parent, whose knowledge concerning the fact or probability of his filiation to the child is superior, the vulnerability to fraudulent claims, is significantly increased."
Chatelain, supra at 1378. Thus, we recognize that a higher standard of proof where the alleged parent is deceased is substantially related to the state's interest in the orderly disposition of property at death because of the danger of fraud and the inability of the opponents to present evidence which might be available to the alleged parent if he were alive. Merely because illegitimate children trying to prove filiation to a deceased parent will have to meet a higher standard than those trying to prove filiation to a living parent does not mean that the statute is unconstitutional. Illegitimates are not excluded from proving filiation, they just have a higher, but hardly insurmountable, burden of proof.
Plaintiff argues that there is no longer any basis for the heightened burden of proof because with the advent of DNA testing, filiation to a living parent is much easier to prove than filiation to a deceased parent whose blood may not be available for DNA testing. However, the availability of DNA testing of a living parent does not mean that the requirement of a heightened burden of proof for deceased parents is not substantially related to the state's interests. As this case illustrates, complete DNA testing of all involved, especially the father, may not be available or the results may be ambiguous, thus leaving the case to be decided by the other evidence which is more susceptible of fraud and harder to rebut when the alleged father is deceased.

CONCLUSION
The burden of proof imposed by Article 209, which requires that illegitimates prove filiation to a deceased parent by clear and convincing evidence, is procedural and retroactively applies to this action. We find that the trial court did not commit manifest error in finding that the plaintiff failed to meet this burden. In addition, the imposition of this burden of proof is constitutional.

DECREE
For the reasons stated herein, the court of appeal's judgment is affirmed.
AFFIRMED.
LEMMON, J., dissents and assigns reasons.
Calogero, C.J., dissents agreeing with Justice Lemmon's dissenting reasons while referring as well to language in Succession of Bartie, 472 So.2d 578.
Kimball, J., not on panel. Rule IV, Part 2, § 3.
LEMMON, Justice, dissenting.
The majority notes that while a legislative amendment depriving an illegitimate child of her right to prove filiation would be substantive and prospective only, an amendment increasing the degree of proof necessary to prove filiation is procedural and may be applied retroactively. I disagree. Before the amendment, this plaintiff had the right to inherit from her alleged father if her evidence of filiation met the preponderance of the evidence standard (which it arguably did). The legislative amendment changing the burden of proof was certainly substantive to her because it cost her the right to inherit. If the party bearing the burden of proof would have the right to inherit under the pre-amendment statute, but no longer has that right under the amended statute, what could be more substantive? A legislative increase in the quantum of necessary evidence is analogous to adding and additional element to the claimant's cause of action, which cannot conceivably be construed as non-substantive.
If the amendment in the present case had shifted the burden of proof to the defendant, *734 certianly the succession would be here screaming that the change was substantive. I fail to see the difference between an amendment shifting the burden of proof to the defendant and an amendment maintaining the burden of proof on the plaintiff but increasing (or doubling or tripling) that burden of proof. A law which makes the enforcement of a right dependant upon the production of certain evidence or upon proof of a specified amount or type of evidence logically is substantive law.
The plaintiff in the present case did not meet her burden of proof under the clear and convincing standard applied by the majority. However, since the amendment is substantive, the pre-amendment burden of proof should apply. I would remand the case to the trial court to apply the preponderance of the evidence standard in this bench trial; alternatively, this court should review the record under the proper standard.
NOTES
[1] We note that in this case, Alana is presumed to be the legitimate child of Davis Benoit, who was her mother's husband at the time of her conception, pursuant to La. C.C. art. 184. However, in Griffin v. Succession of Branch, 479 So.2d 324 (La.1985), we held that children presumed to be the legitimate children of one man under La. C.C. art. 184 were not precluded from filing an action under Article 209 seeking to prove filiation to another man, as the children were "technically illegitimate" as to that other man.
[2] Prior to 1980, the filiation articles provided as followed:

Art. 208. Requirement to prove paternity or maternity.
Illegitimate children, who have not been acknowledged as provided in Article 203, may be allowed to prove their paternal descent.
Art. 209.
In the case where the proof of paternal descent is authorized by the preceding article, the proof may be made in either of the following ways:
1. By all kinds of private writings, in which the father may have acknowledged the bastard as his child, or may have called him so;
2. When the father, either in public or in private, has acknowledged him as his child, or has called him so in conversation, or has caused him to be educated as such;
3. When the mother of the child was known as living in a state of concubinage with the father, and resided as such in his house at the time when the child was conceived.
[3] Ardoin also held that to the extent the statute described a standard of conduct, it was interpretive.
[4] As set forth before the 1981 amendment, Article 208 provided that "[i]llegitimate children, who have not been acknowledged as provided in Article 203, may be allowed to prove their filiation." As amended in 1981, Article 208 now reads: "In order to establish filiation, a child who does not enjoy legitimate filiation or who has not been filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must institute a proceeding under Article 209."
[5] Civil Code Article 189, enacted by Acts 1976, No. 430, § 1, also requires that a father file his disavowal suit within six months of the birth of the child, or knowledge of the birth, but allows that the time for filing suit may be suspended if the father is unable for reasons beyond his control to file the suit timely.
[6] This case is logically consistent with our holding in Chance v. American Honda Motor Co., Inc., 93-2582 (La.4/11/94), 635 So.2d 177, 178, wherein we held that once an action has prescribed, the right to plead prescription is a substantive right which cannot be stripped away by the retroactive application of a new prescriptive period which would result in the revival of the prescribed cause of action.