829 So.2d 1117 (2002)
Kathy MARMINO
v.
CITY OF CROWLEY.
No. 02-0472.
Court of Appeal of Louisiana, Third Circuit.
October 30, 2002.
*1118 Michael Benny Miller, Miller & Miller, Crowley, LA, for Plaintiff/Appellee, Kathy Marmino.
Christopher Richard Philipp, Lafayette, LA, for Defendant/Appellant, City of Crowley.
Court composed of NED E. DOUCET, JR., Chief Judge, MARC T. AMY and GLENN B. GREMILLION, Judges.
AMY, Judge.
The Office of Workers' Compensation concluded that the death of the claimant's husband was related, in part, to treatment for hepatitis contracted in the decedent's capacity as a firefighter. The employer appeals. For the following reasons, we affirm.

Factual and Procedural Background
Paul Marmino began employment as a firefighter with the City of Crowley in 1969. He continued working with the department until his death on March 10, 1996. At issue in this case is the contention of the claimant, Kathy Marmino, that her husband's death was caused, at least in part, by Hepatitis C or a heart condition, both of which Mrs. Marmino contends her husband contracted during his work as a firefighter. The claimant filed suit, seeking workers' compensation benefits associated with Mr. Marmino's final medical expenses and those attributable to his death.
As will be seen below, the record indicates that, prior to his March 10, 1996 death, Mr. Marmino suffered from a number of health problems. In 1972, Mr. Marmino was involved in a motorcycle accident and required a blood transfusion. Mrs. Marmino explained that in his capacity as a firefighter, Mr. Marmino underwent a regular blood test and tested positive for Hepatitis B in 1988. However, Dr. Mulraj N. Katira, Mr. Marmino's internist, testified that he never treated Mr. Marmino for any type of hepatitis or heart condition before 1990.
*1119 In May 1990, Mr. Marmino responded to an automobile accident on the interstate, which required extraction of the victims from the vehicles. It was at this scene, the claimant contends, that Mr. Marmino contracted Hepatitis C. Mrs. Marmino, who was also at the scene as a volunteer firefighter/paramedic, and Fire Chief Russell Meche, each testified as to the presence of blood and body fluids at the scene. They also explained that Mr. Marmino was cut on the arm during the rescue. Both explained that, afterwards, they learned that one of the victims from the May 1990 accident had hepatitis.
In November 1990, Dr. Katira began to treat Mr. Marmino for hypertension. On August 21, 1991, Dr. Katira treated Mr. Marmino for hepatitis for the first time. This treatment followed a fainting episode causing Mr. Marmino to report to the emergency room. Dr. Katira again saw Mr. Marmino on August 30, 1991, and discovered that he had elevated liver enzymes. When tested, Mr. Marmino was positive for antibodies of Hepatitis C. Dr. Katira further testified that his testing revealed antibodies for Hepatitis B, but that his "surface antigen was negative which means ... he had contacted [sic] Hepatitis B, but he had gotten over it, and he was immune to Hepatitis B." Dr. Katira explained, therefore, that he felt the problems Mr. Marmino was experiencing were related to Hepatitis C. Mr. Marmino began treatment with Dr. Jacques Noel and Dr. Frederic Regenstein for his liver condition. By 1992, Mr. Marmino was demonstrating cirrhosis of the liver. The condition was treated with steroids. He was treated for Hepatitis C until his death.
During the course of his treatment for hepatitis, Mr. Marmino was also treated for heart disease. Dr. Katira explained that Mr. Marmino underwent angioplasty in 1990 and two angioplasty procedures in 1995.
On March 5, 1996, Mr. Marmino reported to the American Legion Hospital in Crowley, complaining of abdominal pain. Mr. Marmino was treated for the pain and released. On March 8, Mr. Marmino again felt weak at home, was taken to the hospital by ambulance, and underwent surgery for the removal of his gallbladder. Mr. Marmino died on March 10, 1996. The American Legion Hospital record of March 10, prepared by Dr. Katira, lists the following cause of death: "1) Gram negative septic shock, secondary to gangrenous cholecystitis; 2) Acute renal failure, secondary to septic shock; 3) Chronic active hepatitis; 4) Diabetes mellitus; 5) Hypertension; 6) Coronary heart disease; 7) Cushing's syndrome from long term steroid use." Dr. Katira testified that septic shock was the primary cause of Mr. Marmino's death.
Mrs. Marmino filed the Disputed Claim for Compensation instituting this matter in November 1996. In an attached Petition for Workers' Compensation Benefits, Penalties and Attorney's Fees, the claimant contended that Mr. Marmino contracted Hepatitis B and C while in the course and scope of his employment. In argument, the claimant points to the May 1990 automobile accident at which Mr. Marmino sustained a cut while assisting a victim reportedly found to have hepatitis. The claimant also observes that Mr. Marmino suffered from cardiovascular disease at the time of his death. She contends that her husband's death was caused, at least in part, by his heart and hepatitis conditions.
The workers' compensation judge found in favor of the claimant, awarding death benefits in accordance with La.R.S. 23:1232(1), medical expenses, and reimbursement for burial expenses, pursuant to La.R.S. 23:1210. The claimant's request for penalties and attorney's fees was denied, however, as the workers' compensation *1120 judge found the matter to be reasonably controverted.
The City of Crowley appeals, assigning the following as error:
1. The trial court committed manifest error and was clearly wrong when it found that Paul Marmino contracted hepatitis C from his employment.
2. The trial court committed manifest error and was clearly wrong when it found that Paul Marmino's steroid treatment for the hepatitis C prevented him from receiving appropriate medical care on March 5, 1996, which caused him to develop a gangrenous gall bladder.
3. The trial court committed a legal error giving retroactive application to Acts 2001, No. 433, § 1, enacted as La.Rev.Stat.Ann. § 33:2012, which was subsequently re-designated as La.Rev.Ann. § 33:1948.
4. The court committed a legal error when it denied the appellant's exception of prescription.
The claimant has answered the appeal, seeking penalties and attorney's fees, for work performed at both the trial and appellate levels.

Discussion

Course and Scope of Employment
The City first argues that the workers' compensation judge erred in finding that Mr. Marmino contracted hepatitis through his employment as a firefighter. In particular, the City questions the application of the presumption of causation provided by La.R.S. 33:2012. The workers' compensation judge's reasons for ruling indicate reliance on the statutory presumption, which became effective after Mr. Marmino's death, but prior to trial. The statute, which has since been redesignated as La.R.S. 33:1948, provides:
A. Because of exposure to blood and saliva of accident and crime victims, when a firefighter or policeman in the classified service, who has completed two or more years of service, has contracted Hepatitis B or Hepatitis C, such disease shall be deemed an occupational disease or infirmity connected with the duties of a firefighter or policeman. The disease or infirmity shall be presumed to have been caused or to have resulted from such work performed. The presumption shall be rebuttable by evidence meeting judicial standards, and shall be extended to a member following termination of service for a period of three months for each full year of service not to exceed sixty months commencing with the last actual date of service. The presumption shall also be rebuttable by evidence that the otherwise eligible affected member was at the time of diagnosis of Hepatitis B or C, or within one year of such diagnosis, unlawfully using controlled substances by means of intravenous injection, or lived in an intimate relationship with any person who has been diagnosed with Hepatitis B or C.
B. The affected member or his survivors shall be entitled to all rights and benefits as granted by state or federal law to which one suffering from an occupational disease is entitled as service connected in the line of duty.
C. The provisions of this Section shall not be construed to affect in any way the provisions of R.S. 33:2011 or R.S. 33:2581.
There is no indication as to whether the legislation intended for the provision to be applied retroactively.
With regard to the question of retroactive/prospective application of legislation, Article 6 of the Louisiana Civil Code provides: "In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative *1121 laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary." The Louisiana Supreme Court has further instructed that, in the event that the legislature has made its intent known, the court's inquiry ends. See Cole v. Celotex Corp., 599 So.2d 1058 (La.1992). Absent that intent, however, the court is left to classify the legislation as substantive, procedural or interpretive. Id.
In Sudwischer v. Estate of Hoffpauir, 97-0785 (La.12/12/97); 705 So.2d 724, cert. denied, 524 U.S. 940, 118 S.Ct. 2347, 141 L.Ed.2d 717 (1998), the supreme court reviewed jurisprudence in which it had considered the differences between the various classifications described in La.Civ. Code art. 6. It explained:
"Substantive laws are laws that impose new duties, obligations or responsibilities upon parties, or laws that `establish new rules, rights and duties or change existing ones.'" Manuel [v. Louisiana Sheriff's Risk Management Fund [664 So.2d 81, at 86], [(La.1995)] (citing St. Paul Fire & Marine Ins. Co. v. Smith] [609 So.2d 809] at 817 [(La. 1992)]). "Interpretive laws are those which clarify the meaning of a statute and are deemed to relate back to the time that the law was originally enacted." Id. "Procedural laws prescribe a method for enforcing a substantive right and relate to the form of the proceeding or the operation of the laws." Rouselle [Rousselle v. Plaquemines Parish School Board] [633 So.2d 1235] at 1244 [(La. 1994)]; Segura v. Frank, 630 So.2d 714.
Sudwischer, 97-785, p. 9; 705 So.2d 724, 729. The supreme court further observed that statutes changing a burden of proof are procedural in nature and, thus, are to be given retroactive application. Id. The supreme court cautioned, however, that procedural laws must not be given retroactive effect if their application would disturb vested rights. Id. With regard to evidentiary presumptions, the supreme court has found that statutes creating rebuttable presumptions are to be considered procedural in nature. See Tullier v. Tullier, 464 So.2d 278 (La.1985). See also State ex rel. Dept. of Social Servs. v. Johnson, 98-2712 (La.App. 1 Cir. 2/18/00); 753 So.2d 388; Bruscato v. Avant, 95-0573 (La.App. 4 Cir. 7/26/95); 660 So.2d 72, writ denied, 95-2481 (La.12/15/95); 664 So.2d 457.
However, the City of Crowley contends that La.R.S. 33:1948 is "more than an evidentiary presumption." Rather, the City contends that "the statute deprives the employer of a manner of defending itself against such a claim and thus serves to disturb a pre-existing right. That right is a vested property right belonging to the employer and is protected by the due process guarantees." (Citations omitted.)
Our review of the statute indicates that it does not deprive the City of a vested right or create a new right for the claimant. Rather, La.R.S. 33:1948 provides an employee with a statutory presumption in cases involving Hepatitis B or C. Prior to the statute's enactment, a firefighter or police officer could put forth evidence to prove that his or her Hepatitis B or C condition was work-related. The statute merely eases that initial burden of proof, placing responsibility on the employer to rebut the presumption. The statute is best viewed as procedural, one that requires retroactive application in this case. Accordingly, the workers' compensation judge did not err in its application.
In addition to the applicability of the presumption, the workers' compensation judge also heard testimony from Mrs. Marmino and Fire Chief Russell Meche, who each stated that Mr. Marmino was at the scene of a May 1990 accident at which a victim needing assistance was later found to have hepatitis. Furthermore, both testified *1122 that Mr. Marmino was cut while working this accident. The employer's accident report completed after the May 1990 automobile accident is contained in the record. The report provides that Mr. Marmino "cut right arm at elbow" and further indicates that he was "cut while removing victim from wreckage." Beneath this statement, the report contains the notation "expose [sic] to hepatitis[.]" Although the employer points to the evidence of Mr. Marmino's 1972 blood transfusion, received after his involvement in a motorcycle accident, and expert testimony placing the causation of the hepatitis on this transfusion, the workers' compensation judge was in a position to sift through the evidence and various opinions to reach the conclusion that Mr. Marmino contracted Hepatitis C while on the job.
Causation
Next, the City of Crowley contests the workers' compensation judge's determination that the steroids administered to Mr. Marmino as treatment for Hepatitis C contributed to his death. The employer argues that the workers' compensation judge erroneously evaluated the expert testimony regarding whether steroid treatment could mask the symptoms of the gallbladder disease, thereby delaying diagnosis, and eventually causing death due to delayed treatment. The employer contends that "[a] careful review of this testimony will reveal this is sheer speculation and completely inadequate to sustain the appellee's burden of proof." The argument that follows in the employer's brief is focused on the merits of the testimony of its own expert witnesses versus that of Dr. Katira.
The workers' compensation judge rendered extensive, detailed reasons for ruling. The reasons contain a synopsis of each physician's testimony regarding Mr. Marmino's condition, the likelihood, or lack thereof, of Mr. Marmino contracting Hepatitis C at the May 1990 automobile accident scene, and whether steroid use associated with the treatment for Hepatitis C could have been a factor in Mr. Marmino's death. The workers' compensation judge also observed that there was testimony indicating that steroid use could mask the symptoms that could assist in diagnosing Mr. Marmino when he reported to the hospital in March 1996. The workers' compensation judge set forth the following conclusions:
The court concludes that (1) Mr. Marmino suffered from hepatitis C which was contracted at work in May 1990(2) that his lack of fever on March 5, 1996 prevented him from receiving appropriate medical care, and (3) his lack of fever was the result of his steroid treatment for hepatitis C.
... Further, while it would seem that since all the doctors agree that steroid treatment can mask the symptoms of an infection, any doctor familiar with Mr. Marmino's medical condition might have taken a different treatment route than was taken on March 5 when cholecystitis was diagnosed, any failure to take a different treatment course would not constitute an intervening event under the workers' compensation law. In Fruge v. Hub City Iron Works, Inc., 131 So.2d 593 (La.App. 3d Cir.1961), subsequently relied upon in Looney v. Glasscock Drilling, 625 So.2d 1110 (La.App. 3d Cir.1993), writ denied, 93-2782 (La.1/28/94), 630 So.2d 788, the court held that when the medical treatment for the accidental injuries is cause in fact of the final condition of the employee, such residual is in itself considered a result of the accident and therefore compensable, even where caused subsequent to the accident by negligent treatment. Therefore the court finds in favor of Mrs. Marmino.
*1123 Our review of the record reveals support for the above view. Having found no error in the conclusion that Mr. Marmino contracted Hepatitis C in the course and scope of his employment, as explained above, the remaining issue to be resolved is whether the steroid treatment received by Mr. Marmino contributed to his death. Dr. Katira testified that Mr. Marmino received cortisone for treatment of Hepatitis C and that long-term use of the medication can further impair a compromised immune system, diminishing the ability to fight infection. Dr. Katira further explained that the treatment can mask an infection, making a correct diagnosis more difficult. With regard to the treatment received in the days before Mr. Marmino's death, Dr. Katira responded as follows upon questioning by counsel for the claimant:
Q In this particular case I know on March the 5th he went to the hospital, and he was having problems. And apparently, it's the same problems that he eventually died from. Would taking the cortisone have delayed him going for help in the first place?
A Correct.
Q And then when he got there it tended to mass [sic] the symptoms so they couldn't diagnose him?
A Yes.
Q So it in effect delayed the treatment?
A That's correct.
Q So when he went back three days later because these problems arose, he was too far gone?
A That's correct.
Q And eventually he died on the 10th.
A Right.
Dr. Katira continued, opining that the cortisone treatments were a contributing factor in Mr. Marmino's death.
The employer correctly points out that physicians testifying in its favor found no correlation between Hepatitis C and its treatment and development of gallbladder disease. However, the workers' compensation judge observed that several of these physicians agreed that steroid use can mask the symptoms of infection. Dr. Charles Sanders, an internist, testified that he did not believe that long-term steroid therapy was associated with gallbladder disease. On questioning by claimant's counsel, Dr. Sanders indicated that steroid use can mask the manifestation of an infection, delaying treatment. Dr. Brobson Lutz, an internist and specialist in infectious diseases, who primarily testified as to whether Mr. Marmino's exposure could have been work-related, also confirmed that the use of cortisone can mask the symptoms of an illness. Finally, Dr. Frederic Regenstein, a specialist in the fields of internal medicine and gastroenterology, treated Mr. Marmino for his liver condition. He explained that he believed that Mr. Marmino was at an increased risk for developing cholecystitis due to his liver condition and that once he developed cholecystitis, his condition became more difficult to promptly diagnose and treat.
The workers' compensation judge was presented with differing views regarding whether Hepatitis C and, in turn, cirrhosis of the liver could have been work related, whether the treatment for that condition was related to the development of the gallbladder condition causing his death, and, ultimately, whether steroid therapy delayed treatment for the gallbladder condition. The workers' compensation judge considered these experts, extracting those portions of the opinions found to be generally consistent. In evaluating expert testimony, and in the evaluation of differing expert testimony, a workers' compensation judge is afforded much discretion. Beverly v. Boardwalk Constr., 00-219 (La.App. 3 Cir. 10/11/00); 771 So.2d 741, writ denied, 00-3096 (La.1/5/01); 778 So.2d 1142. As our review indicates that the workers' *1124 compensation judge's observations and reasoning are supported by the record, we find no abuse of discretion.
Prescription
Finally, the employer makes a brief argument that the workers' compensation judge erred in denying its exception of prescription. It points out that Mr. Marmino died on March 10, 1996, but that the disputed claim for compensation was not filed until November 1996, more than six months after the claim arose. At the time of Mr. Marmino's death, La.R.S. 23:1031.1(F) provided:[1]
F. All claims for death arising from an occupational disease are barred unless the dependent or dependents as set out herein file a claim with the deceased's employer within six months of the date of death of such employee or within six months of the date the claimant has reasonable grounds to believe that the death resulted from an occupational disease. Notice filed with the compensation insurer of such employer shall constitute a claim as required herein.

(Emphasis added.)
As can be seen by reference to the final sentence of La.R.S. 23:1031.1(F), the "claim" anticipated by the statute is not necessarily the filing of the disputed claim for compensation. Rather, the statute indicates that "[n]otice filed with the compensation insurer" constitutes a claim. See also LaCour v. Hilti Corp., 98-2691 (La.5/18/99); 733 So.2d 1193.
The record indicates that the employer's insurer had notice of the claim for benefits within six months of Mr. Marmino's death. Although there is no indication in the record as to what evidence may have been before the workers' compensation judge at the time the exception of prescription was denied, the employer's submission in support of its case on the merits contains correspondence between Dr. Katira and the employer's insurer, as well as correspondence between the insurer and Mrs. Marmino regarding the claim. These letters were written in May and July 1996, within the six month period of La.R.S. 23:1031.1. Accordingly, the record reveals no error in the denial of the exception of prescription.

Penalties and Attorney's Fees
Mrs. Marmino has answered the employer's appeal, seeking penalties and attorney's fees denied by the workers' compensation judge. She also requests attorney's fees for work performed on appeal. After finding that workers' compensation benefits were owed, the workers' compensation judge explained its decision to deny penalties and attorney's fees as follows:
However, due to the complexity of the case, and the tenuous nature of the probabilities, to a significant degree affected by a presumption enacted post-trial, the court finds that the employer reasonably controverted the case, and therefore no penalties or attorneys fees are owed. The employer reasonably investigated the case, and the more information developed, the more complicated the case became. The court's own IME did not believe there to be any work related causality involved in Mr. Marmino's death. The claim for penalties and attorney fees is therefore denied.
*1125 A workers' compensation judge's determination regarding the award of statutory penalties and attorney's fees is owed great discretion and will not be overturned unless clearly wrong. Balthazar v. Guillory Racing Farms, 00-941 (La.App. 3 Cir. 3/7/01); 802 So.2d 9. Our review of the record indicates support for the view that the case presented was a complex one, reasonably controverted by the employer. Accordingly, we do not find that the decision to deny penalties and attorney's fees is clearly wrong. Furthermore, the claimant's request for attorney's fees on appeal is also denied.

DECREE
For the foregoing reasons, the decision of the workers' compensation judge is affirmed. All costs of this appeal are assessed to the defendant, City of Crowley.
AFFIRMED.
NOTES
[1] La.R.S. 23:1031.1(F) has since been amended, and now provides:

F. All claims for death arising from an occupational disease are barred unless the dependent or dependents as set out herein file a claim as provided in this Chapter within one year of the date of death of such employee or within one year of the date the claimant has reasonable grounds to believe that the death resulted from an occupational disease.