982 So.2d 795 (2008)
Melvin J. BURMASTER
v.
PLAQUEMINES PARISH GOVERNMENT.
No. 2007-CA-2432.
Supreme Court of Louisiana.
May 21, 2008.
*798 W. Eric Lundin, III, Parish Attorney, Michael Lawrence Mullin, Assistant Parish Attorney, for appellant.
Corona & Bonura, Mark Morovich Bonura, Metairie, Elizabeth Welsh Defley, Gelpi & Associates, Melvin Joseph Burmaster, New Orleans, for appellee.
James D. Caldwell, Tallulah, and Kathleen Megan Terrell, for amicus curiae, State of Louisiana
CALOGERO, Chief Justice.
This case involves the direct appeal of a district court judgment that declared unconstitutional as applied to plaintiff's individual and class actions, La. Act 545 of 2006, incorporated into the Louisiana Revised *799 Statutes as 9:2800(H), which provides, in pertinent part, as follows:
(1) Notwithstanding any provision of law to the contrary, except for gross negligence or willful and wanton misconduct, no person shall have a cause of action based solely upon liability imposed under Civil Code Articles 2317 and 2317.1 against a public entity for any damages arising from hurricanes Katrina or Rita, including aftereffects of either hurricane and post-hurricane restoration, repair, cleaning, and construction.
We find that application of 2006 La. Act 545 to plaintiffs' claims that accrued, became vested, and were pending prior to June 22, 2006, the effective date of the act, would divest plaintiffs of their due process rights in violation of the Louisiana and United States Constitutions. Accordingly, we affirm the district court judgment denying the defendant's exception of no cause of action and remand the case to the district court for further proceedings.

FACTS AND PROCEDURAL HISTORY
This case was initiated on April 7, 2006, when plaintiff, Melvin J. Burmaster, filed an individual suit against defendant, Plaquemines Parish Government ("PPG"), in which he sought damages to his property, located on the east bank of the Mississippi River in Plaquemines Parish, Louisiana. Plaintiff alleged that his damages were caused by PPG's failure to maintain, or its improper maintenance, of its hurricane protection levee on the east bank in Plaquemines Parish. Plaintiff's petition further asserted that "PPG's failure to maintain the levee resulted in a breach of the levee which, but for PPG's negligence, would have been adequate to hold against the storm surge occasioned by Hurricane Katrina." Plaintiff asserted that PPG was "strictly liable"[1] under La. Civ.Code arts. 660, 2317, 2317.1, 2322, 2692, 2693 and 2695.[2] Finally, plaintiff asserted that PPG is liable in negligence.
On May 8, 2006, plaintiff filed his "First Amended and Supplemental Petition for Damages," in which he alleged that he was filing individually, and in addition "as representative of the class of all others similarly situated with respect to claims for damages sustained by them and others similarly situated." Plaintiff also amended his claims against PPG to allege "fault within the intent and meaning of [La. Civ. Code art. 2315][3] in the negligent design, construction, manufacture, operation, repair, maintenance and supervision of the levee."
*800 On September 25, 2006, PPG responded by filing an "Exception of No Cause of Action," asserting that "plaintiff has no cause of action pursuant to 2317, 2317.1, and 2692 through 2695 of the Louisiana Civil Code." PPG's "Memorandum in Support of Exception of No Cause of Action" quotes La.Rev.Stat. 9:2800(H) and asserts that the legislature intended by adopting that statute "to relieve public entities from claims similar to the plaintiff's pursuant to Arts. 2317 and 2317.1." Concerning plaintiff's claims under La. Civ.Code arts. 2692 through 2695, PPG argued that plaintiff has no cause of action because those articles deal strictly with the landlord-tenant relationship and no allegation of such a relationship had been set forth in this case, such that those codal articles have no bearing on this case.[4]
On October 30, 2006, plaintiff filed a "Motion Opposing the Application of Acts 2006, No. 545 to this Litigation,"[5] in which he asserted that "application of Acts 2006, Number 545 to this litigation and denying the plaintiff and the class of victims would divest the plaintiff and the class of victims of a vested substantive right which right accrued and was being litigated before the enactment of Acts 2006, Number 545." Further, plaintiff asserted that application of the act to this case "would violate constitutional due process safeguards afforded the plaintiff and the class of victims under both the state and federal constitutions." Plaintiff's motion noted that plaintiff and the members of the putative class "do not contend that Acts 2006, Number 545 is unconstitutional but that application of Acts 2006, number 545 to this litigation would be unconstitutional." Thus, plaintiff provided notice that a copy of the motion would be "filed with the Attorney General of the State of Louisiana in accordance with law by certified *801 mail and notice given as to the hearing on the exceptions."[6]
On February 27, 2007, plaintiff filed an "Amended Motion Opposing the Application of Acts 2006, No. 545 To This Litigation." Following a hearing on PPG's exception of no cause of action on March 16, 2007, the district court issued judgment denying the exception. The transcript from the hearing includes the district judge's statement of his ruling that 2006 La. Act 545 "clearly does apply, that the act was unconstitutional, and the Exception of No Cause of Action should be denied."
PPG[7] sought a direct appeal of the district court judgment in this court, pursuant to this court's appellate jurisdiction as set forth in La. Const. art. V, § 5(D).[8] On August 31, 2007, this court issued a per curiam decision that dismissed the appeal because it was not properly before the court. Burmaster v. Plaquemines Parish Gov't, 97-1311, p. 1 (La.8/31/07), 963 So.2d 378, 378. The per curiam stated, in pertinent part, as follows:
Although the district court's oral reasons for judgment discuss the constitutionality of Act 545, it is well-settled law *802 that the trial court's oral or written reasons form no part of the judgment. . . .
Because there is no declaration of unconstitutionality in the district court's judgment, there is no basis for the exercise of this court's appellate jurisdiction.
Id. at 1-2, 963 So.2d at 379 (citations omitted). This court remanded the case to the district court for further proceedings.
On remand, the district court issued an amended judgment that found "that Act 545 of the 2006 Legislative Session applies to the claims raised in plaintiff's petition pursuant to LSA CC Arts. 2317 and 2317.1, and that said Act is unconstitutional." Thus, the district court denied PPG's exception of no cause of action. PPG filed a direct appeal of the amended judgment in this court.
Although the district court judgment now before this court does declare that 2006 La. Act. 545 "is unconstitutional," the district court found in this case only that that the act would be unconstitutional if applied to the plaintiff and the putative class. That finding is implicit in the district court's finding "that Act 545 of the 2006 Legislative Session applies to the claims raised in plaintiff's petition pursuant to LSA CC Arts. 2317 and 2317.1, and that said Act is unconstititutional." Further, the unconstitutionality of 2006 La. Act 545 is the only thing that was argued in the district court. Plaintiff has repeatedly stated that neither he nor the putative class members contend that 2006 La. Act 545 is unconstitutional on its face. Because the district court found only that the act would be unconstitutional if applied to plaintiffs' claims, this court's appellate jurisdiction under La. Const. art. V, § 5(D) is arguably not invoked. See D & A Constr. Co. v. Jefferson Davis Parish School Bd., 251 La. 257, 203 So.2d 712 (1967). Further, "[w]hen only the application . . . to the particular subject matter is assailed, this Court is without appellate jurisdiction." Id.
However, this court has previously remanded this case to the district court for further proceedings, and later accepted PPG's appeal of the amended judgment, and has entertained oral argument. For those reasons and in the interest of judicial economy, we choose to convert PPG's appeal to a supervisory writ and treat the case as we would were we to have granted a writ to address whether 2006 La. Act 545 would be unconstitutional if applied to plaintiffs' claims. See, e.g., Unwired Telecom Corp. v. Parish of Calcasieu, 03-0732 (La.1/19/05), 903 So.2d 392 (addressing constitutional issues under the court's supervisory jurisdiction).

PLAINTIFF'S STATUTORY ARGUMENTS
Although Louisiana courts generally possess the power and authority to decide the constitutionality of challenged statutory provisions, a court is required to decide a constitutional issue only "if the procedural posture of the case and the relief sought by the appellant demand that [it] do so." Ring v. State, Dept. of Transp. & Development, 02-1367, p. 6 (La.1/14/03), 835 So.2d 423, 428. Accordingly, "courts should refrain from reaching or determining the constitutionality of legislation unless, in the context of a particular case, the resolution of the constitutional issue is essential to the decision of the case or controversy." Id. at 4, 835 So.2d at 426. Courts "should avoid constitutional rulings when the case can be disposed of on non-constitutional grounds." Id. At 4, 835 So.2d at 427. Therefore, if this case can be disposed of on the basis of a statutory argument (i.e., a non-constitutional ground), this court should base its decision on the statutory ground and reverse the *803 district court's finding that La.Rev.Stat. 9:2800(H) is unconstitutional.
Plaintiff contends that the district court was not required to declare La.Rev. Stat. 9:2800(H) unconstitutional in order to dispose of this case. Instead, plaintiff sets forth three statutory arguments for finding that La.Rev.Stat. 9:2800(H), enacted by 2006 La. Act 545, does not apply to this case. In his first statutory argument, plaintiff asserts that the Louisiana Legislature did not intend for La.Rev.Stat. 9:2800(H) to apply to this case, which had already been filed and was pending when La.Rev.Stat. 9:2800(H) became effective on June 22, 2006, because the statute does not contain an express declaration that it applies to pending cases. Had the legislature intended that La.Rev.Stat. 9:2800(H) apply to cases pending on its effective date, plaintiff argues, it would have expressly so provided, as it did when the amendment to La. Civ.Code art. 2315 was adopted by 1999 La. Act 989. (See discussion below.)
The constitutionality of the retroactive application of 1999 La. Act 989 was at issue in this court's decision in Bourgeois v. A.P. Green Indus., Inc., 00-1528 (La.4/3/01), 783 So.2d 1251. As we noted in Bourgeois, 1999 La. Act. 989, § 3, provided, in pertinent part, as follows:
The provisions of this Act shall be applicable to all claims existing or actions pending on its effective date and all claims arising or actions filed on or after its effective date.
In support of his argument that 2006 La. Act 545 does not apply to his case because it does not contain a similar provision, plaintiff cites the United States Supreme Court's admonition in Schwab v. Doyle, "that laws are not to be considered as applying to cases which arose before their passage unless that intention be clearly declared." 258 U.S. 529, 534, 42 S.Ct. 391, 66 L.Ed. 747 (1922) (quoting United States v. Heth, 3 Cranch 399, 413, 2 L.Ed. 479 (1806)).
Although 2006 La. Act 545 does not, as plaintiff points out, include any express statement that it is intended to apply to pending cases, it does contain an express retroactivity clause. Specifically, La.Rev. Stat. 9:2800(H)(4), as adopted by the act in question, states that "[t]he provisions of this subsection shall be given retroactive application to August 26, 2005." Furthermore, La.Rev.Stat. 9:2800(H)(1) provides specifically that "no person shall have a cause of action . . . for any damages arising from hurricanes Katrina or Rita." The damages sought by the plaintiff and the putative class in this case are unquestionably "damages arising out of Hurricane Katrina," which occurred on August 29, 2005, and thus were sustained after August 26, 2005. Thus, the retroactivity clause expressly prohibits the claims set forth by the plaintiff and the putative class. Given the specificity in the retroactivity clause, an express statement that La.Rev.Stat. 9:2800(H) applies to cases pending on its effective date was unnecessary, and would, in fact, have been redundant. We find that the legislature's intent that La.Rev.Stat. 9:2800(H) be applied to cases pending on its effective date is "clearly declared," as required by the United States Supreme Court's pronouncements in Schwab and Heth, in the express statement of retroactivity. Accordingly, we find no merit in plaintiff's argument that the Legislature did not intend that 2006 La. Act 545 apply to pending cases.
Plaintiff's second statutory argument focuses on the legislature's inclusion of the word "solely" in La.Rev.Stat. 9:2800(H). Plaintiff notes that the statute provides that "no person shall have a cause of action based solely upon liability imposed under" La. Civ.Code arts. 2317 and *804 2317.1. According to plaintiff, the presence of the word "solely" indicates that the legislature did not intend for La.Rev.Stat. 9:2800(H) to apply to this case because, in addition to the fact that he alleges liability under La. Civ.Code arts. 2317 and 2317.1, he alleges liability for general negligence under La. Civ.Code art. 2315. Thus, his cause of action is not based solely on La. Civ.Code arts. 2317 and 2317.1 because it is also based on La. Civ.Code art. 2315, and therefore La.Rev.Stat. 9:2800(H) does not apply to this case, plaintiff contends.
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. Civ.Code art. 9. Further, each statutory provision should be construed along with the remainder of the statute. Pepper v. Triplet, 03-0619, p. 17 (La. 1/21/04), 864 So.2d 181, 193. Additionally, every word in a statute must be given meaning, if possible, and no word, clause, phrase or sentence of a statute shall be deemed meaningless or surplusage if a construction can be legitimately found that will give force to and preserve every word of the statute. Breaux v. Laforche Parish Council, 02-1422 (La.App. 1 Cir. 5/9/03), 851 So.2d 1173, writ denied, 03-2678 (La.12/12/03), 851 So.2d 1173 (citing State v. Fontenot, 112 La. 628, 36 So. 630 (1904); State v. Dozier, 258 La. 323, 246 So.2d 187 (1971)).
Applying these rules of statutory construction, we reject plaintiff's argument that La.Rev.Stat. 9:2800(H) does not apply to the claims asserted herein because these causes of actions are not based solely on La. Civ.Code arts. 2317 and 2317.1. La.Rev.Stat. 9:2800(H) does indeed refer to "a cause of action based solely upon liability imposed under Civil Code Articles 2317 and 2317.1," and we are obliged to give the word "solely"[9] meaning in our interpretation of the provision, if possible. On the other hand, "the object of the court in construing a statute is to ascertain the legislative intent and, where a literal interpretation would produce absurd consequences, the letter must give way to the spirit of the law and the statute construed so as to produce a reasonable result." City of New Orleans v. Louisiana Assessors' Retirement and Relief Fund, 05-2548, p. 35 (La.10/1/07), ___ So.2d ___, ___ (quoting SWAT 24 Shreveport Bossier, Inc. v. Bond, 00-1695, p. 12 (La.6/29/01), 808 So.2d 294, 302).
We find that the interpretation of the word "solely" urged by the plaintiff in this case "would produce absurd consequences" and therefore decline to adopt that interpretation. Whatever purpose the legislature had for including the word "solely" in La.Rev.Stat. 9:2800(H), it could not have intended to prohibit claims arising under La. Civ.Code arts. 2317 and 2317.1 only if those claims were not coupled with other claims. Such an interpretation would at least seemingly be unreasonable and would surely be inconsistent with the statute's purpose to immunize public entities from claims under La. Civ.Code arts. 2317 and 2317.1 for damages arising out of the 2005 hurricanes. If a plaintiff could avoid the prohibition (i.e., the immunity from claims under La. Civ.Code arts. 2317 and 2317.1 that would otherwise flow to the public entity) by simply including in his petition an additional claim, such as the general negligence claim asserted by the plaintiff herein, the statute would be rendered meaningless because every plaintiff would simply couple their claims under La. *805 Civ.Code arts. 2317 and 2317.1 with a negligence claim or another type of claim.
La.Rev.Stat. 9:2800(H) is not a model of clarity. Nevertheless, the statute does clearly limit claims against public entities for damages arising out of hurricanes Katrina and Rita to those based on gross negligence or willful and wanton misconduct. That being the case, the statute was apparently intended to eliminate general negligence claims like those set forth by the plaintiff herein. Construction of every word and provision of the statute in light of the remainder of the statute compels that observation. If the statute was not intended to prohibit general negligence claims, there was surely no reason for the legislature to have included an exception for "gross negligence and willful and wanton misconduct." In short, plaintiff's argument focuses entirely on the inclusion of the word "solely" in the statute, while ignoring other meaningful words and provisions. Accordingly, we find no merit in the plaintiff's second statutory argument  i.e., that La.Rev.Stat. 9:2800(H) does not apply to this case because plaintiff's claims are not based solely on La. Civ.Code arts. 2317 and 2317.1.
In his third statutory argument, plaintiff contends that La.Rev.Stat. 9:2800(H) does not apply to this case, in which he alleged only pre-hurricane fault for failure to properly build and maintain the levees, because the Louisiana Legislature's intent when it passed 2006 La. Act. 545 was only to immunize actions of public bodies that occurred immediately after hurricanes Katrina and Rita. According to plaintiff, that intent is evident from the legislature's reference in the act to such post-hurricane activities as "restoration, repair, cleaning, and construction." Plaintiff argues that his individual claims and the claims of the putative class arise out of pre-hurricane actions and omissions  i.e., PPG's alleged failure to properly build and maintain the levees in question during the years prior to the catastrophic storms that resulted in the levee failure in August 2005.
As previously noted, La. Civ.Code art. 9 provides that clear, unambiguous laws should be interpreted as written without searching for the legislature's intent, so long as its application does not lead to absurd consequences. Whatever other ambiguities are present in La.Rev.Stat. 9:2800(H), we find that its language clearly applies to the claims of plaintiff and the putative class arising out of La. Civ.Code art. 2317 and 2317.1 set forth in this case. Although the statute does indeed refer to some post-hurricane activities that public bodies might take, the main clause of La. Rev.Stat. 9:2800(H) states that "no person shall have a cause of action based solely upon liability imposed under Civil Code Articles 2317 and 2317.1 against a public entity for any damages arising from hurricanes Katrina or Rita." That language clearly and unambiguously applies to the causes of action under La. Civ.Code arts. 2317 and 2317.1 set forth by the plaintiff and the putative class in this case. Thus, we find no merit in plaintiff's third statutory argument for finding that La.Rev.Stat. 9:2800(H) does not apply to this case.
Thus, we reject all three of plaintiff's statutory arguments for finding that La. Rev.Stat. 9:2800(H) does not apply to this case. We find that the district court correctly concluded that, to the extent the plaintiff and the class set forth causes of actions arising under La. Civ.Code arts. 2317 and 2317.1, albeit coupled with assertions of negligence, La.Rev.Stat. 9:2800(H) applies to this case. There being no statutory argument that obviates the need to address the constitutional application of La.Rev.Stat. 9:2800(H) to this case, we now proceed to entertain that issue.

*806 CONSTITUTIONAL APPLICATION OF LA. REV. STAT. 9:2800(H)
Having found no merit in any of plaintiff's statutory arguments for finding that La.Rev.Stat. 9:2800(H), adopted by 2006 La. Act 545, does not apply in this case, we turn to the constitutional question raised by application of the statute to the claims that are asserted herein. Although plaintiff does not allege that 2006 La. Act 545 is unconstitutional on its face, he does contend that application of La.Rev.Stat. 9:2800(H) to this case would unconstitutionally divest him and the class members of vested rights in violation of the substantive due process guaranties established by the Louisiana and United States constitutions. As plaintiff points out, 2006 La. Act 545 became effective on June 22, 2006, after he had filed both his original petition on April 4, 2006, and his amended petition setting forth a class action on May 8, 2006. Thus, the constitutional question this court must answer is whether La.Rev.Stat. 9:2800(H) may be retroactively applied to plaintiff and the class, whose claims had been filed and were pending on the effective date of the statute, or whether such retroactive application would unconstitutionally divest the plaintiff and the class members of vested rights.
This court has considered the retroactive application of newly-adopted statutory language to claims that had been filed prior to the effective date of the statutory change in Bourgeois, 00-1528, 783 So.2d 1251. In that case, the court held that application of 1999 La. Act 989 to the plaintiffs' suit "would impermissibly divest them of a vested right in their causes of action." Id., at 1, 783 So.2d at 1254. The court therefore affirmed the district court's judgment "insofar as it declared Act 989 unconstitutional as applied to plaintiffs' causes of action." Id.
The facts giving rise to the Bourgeois decision are somewhat unique. This court, in a previous decision, had found that the plaintiffs, asymptomatic current and former employees of Avondale Industries, Inc., who had suffered significant occupational exposure to asbestos and therefore needed periodic medical examinations to monitor the effects of that exposure, had suffered "damages," and were therefore entitled under La. Civ.Code art. 2315 to recover medical monitoring costs. Bourgeois v. A.P. Green Indus., Inc., 97-3188 (La.7/8/98), 716 So.3d 355 ("Bourgeois I"). Following Bourgeois I, the Louisiana Legislature amended La. Civ.Code art. 2315 to eliminate medical monitoring as a compensable item of damage, unless the plaintiff has manifested physical or mental injury or disease. Bourgeois II, 00-1528 at 3, 783 So.2d at 1255 In addition to a statement that this court incorrectly interpreted La. Civ.Code art. 2315 in Bourgeois I, the amendment included a statement that the newly-adopted language applied to pending cases. Id. After the amendment became effective, defendant had filed exceptions of no cause of action to plaintiffs' previously-filed claims, citing the new amendment, and plaintiffs had responded with a motion to declare the amendment unconstitutional insofar as it applied to their claims. Id. at 4, 783 So.2d at 1255. This court agreed with the trial court that retroactive application of the amended language to the plaintiffs' claims would unconstitutionally divest the plaintiffs' of their vested rights. Id.
In order to reach its decision in Bourgeois II, this court first engaged in an analysis of whether the legislature intended for the newly-adopted statutory language amending La. Civ.Code art. 2315 to be given retroactive effect as allowed by La. Civ.Code art. 6. Such an analysis is unnecessary in this case because, as we *807 have already noted, the legislature expressly included a retroactivity provision in La.Rev.Stat. 9:2800(H)(4)  "[t]he provisions of this Subsection shall be given retroactive application to August 26, 2005." When a court "can determine the legislature's intent regarding retroactive application of [an act], the [La. Civ.Code art. 6] inquiry [to determine whether the statute was intended to be applied retroactively] is at an end." Id. at 8, 783 So.2d at 1258.
However, "[r]etroactive application of new legislation is constitutionally permissible only if it does not result in impairment of the obligations of contracts or in divestiture of vested rights." Id. at 7, 783 So.2d at 1258., quoting 2 A.N. Yiannopoulos, Louisiana Civil Law Treatise, § 10 (3d ed.1991). Therefore, after finding that the legislature clearly intended that 1999 La. Act 989 apply retroactively, this court in Bourgeois II moved on to an analysis of whether retroactive application of the provision to plaintiffs' pending claims "would violate the constitutional prohibitions against impairment of contractual obligations or disturbance of vested rights." Id. at 8, 783 So.2d at 1258. The court set out the law on this issue as follows:
The legislature's power to enact retroactive laws is limited by the Due Process and Contract Clauses of the Federal and State Constitutions. U.S. Const. amend. XIV, § 1; U.S. Const. art. I, § 10[1]; La. Const. art. I, § 2; La. Const. art. 1, § 23. See also Segura [v. Frank ], 93-1271 at p. 19-20 [(La.1/14/94)], 630 So.2d [714] at 728, and cases cited therein. Plaintiffs contend retroactive application of Act 989 to their claims would contravene due process guarantees by divesting them of their vested rights in their causes of action which accrued prior to the effective date of the Act. We agree.
When a party acquires a right to assert a cause of action prior to a change in the law, that right is a vested property right which is protected by the guarantee of due process. Walls v. American Optical Corp., 98-0455, p. 8 (La.9/8/99), 740 So.2d 1262, 1268. See also Cole [v. Celotex Corp.], 599 So.2d [1058] at 1063 [(La.1992)]; Crier v. Whitecloud, 496 So.2d 305, 308 (La.1986); Faucheaux v. Alton Ochsner Medical Found. Hosp. & Clinic, 470 So.2d 878, 878-79 (La.1985); Lott [v. Haley ], 370 So.2d [521]at 524 [(La. 1979)]; Burmaster v. Gravity Drainage Dist. No. 2, 366 So.2d 1381, 1387 (La.1978). Thus, a cause of action, once accrued, cannot be divested by subsequent legislation. See e.g. Faucheaux, 470 So.2d at 879 ("The statutes enacted after the acquisition of such a vested property right . . . cannot be retroactively applied so as to divest the plaintiff of his vested right in his cause of action because such a retroactive application would contravene the due process guaranties."); Terrebonne v. South Lafourche Tidal Control Levee Dist., 445 So.2d 1221, 1224 (La.1984) ("This vested right could not be impaired by subsequent legislation. The Legislature simply cannot take away an existing cause of action based upon substantive rights which had clearly been granted by legislation during the preceding session and had become vested on the effective date of the legislation."); Favrot v. Parish of East Baton Rouge, 34 La. Ann. 491 (La.1882) ("[P]laintiff cannot be deprived of his [vested] right by mere legislative action."). Under Louisiana law, a cause of action accrues when a party has the right to sue. Falgout v. Dealers Truck Equip. Co., 98-3150, p. 12 (La.10/19/99), 748 So.2d 399, 407 ("When a party acquires a right, either to sue for a cause of action or to defend himself against *808 one, that right becomes a vested property right and is protected by the due process guarantees."); Prejean v. Dixie Lloyds Ins. Co., 94-2979, p. 3 (La.9/15/95), 660 So.2d 836, 837 ("In Louisiana, a cause of action accrues when a party has a right to sue."); Cole, 599 So.2d at 1063 n. 15 ("Under Louisiana law, a cause of action accrues when the party has the right to sue.").
Id. at 9-10, 783 So.2d at 1258-59. After setting forth the above statement of the law, the Bourgeois II court considered "whether the plaintiffs in that case had an accrued cause of action, i.e., the right to sue, prior to the effective date of Act 989." Id. at 10, 783 So.2d at 1259.
In Louisiana, three elements are necessary for a negligence cause of action to accrue: fault, causation and damages. Austin v. Abney Mills, Inc., 01-1598, p. 15 (La.9/4/02), 824 So.2d 1137, 1148. In fact, "a sine qua non for accrual of a cause of action is damages." Id., quoting Cole v. Celotex, 599 So.2d 1058, 1063, n. 15 (La.1992). Since plaintiff alleges that he and the class members sustained damages as a result of Hurricane Katrina, which occurred on August 29, 2005, the cause of action accrued prior to June 22, 2006, the effective date of 2006 La. Act. 545.[10] This finding is consistent with this court's per curiam decision in Faucheaux v. Alton Ochsner Med. Found. Hosp. & Clinic, 470 So.2d 878 (La.1985), which involved a retroactive attempt to eliminate a strict liability cause of action for contaminated blood, in which we stated as follows:
Accordingly, when [the plaintiff's] injury happened, he acquired a cause of action in strict tort liability under Civil Code article 2315 which is a vested property right protected by the guarantee of due process. Lott v. Haley, 370 So.2d 521 (La.1979), Burmaster v. Gravity Drainage District No. 2, 366 So.2d 1381 (La.1978). The statutes enacted after the acquisition of such a vested property right, therefore, cannot be retroactively applied so as to divest the plaintiff of his vested right in his cause of action because such a retroactive application would contravene the due process guaranties. Terrebonne v. South Lafourche Tidal Control, 445 So.2d 1221 (La.1984); Lott v. Haley, supra.

Id. at 878-879.
Neither PPG nor the State of Louisiana, which filed an amicus curiae brief in this court, have argued that the cause of action set forth by plaintiff and the putative class in this case had not accrued prior to the effective date of La.Rev.Stat. 9:2800(H). Instead, they present other arguments for reversing the district court's finding that 2006 La. Act 545 is unconstitutional if applied to this case.
PPG sets forth a single assignment of error, based on this court's decision in Sudwischer v. Estate of Hoffpauir, 97-0785 (La.12/12/97), 705 So.2d 724. In Sudwischer, this court considered whether the plaintiff's constitutional due process rights were violated by an amendment to La Civ.Code art. 209 that changed the burden of proof from preponderance of the evidence to clear and convincing evidence for an unacknowledged, illegitimate child to prove filiation to a deceased parent. In Sudwischer, the court first held that the legislature intended that the new burden of proof apply retroactively because the change was procedural in nature. Id. at 10, 705 So.2d at 729. The court then considered whether the retroactive application of the new burden of proof would *809 operate unconstitutionally to disturb the plaintiff's vested rights. Id. In answer to that question, the court found that the "retroactive application of a higher burden of proof does not eliminate plaintiff's vested right to prove filiation, it merely imposed a different, though reasonable, burden of proof." Id. This court's conclusion was based on its finding that "the change in the burden of proof from preponderance of the evidence to clear and convincing falls under the definition of a procedural law in that it prescribes a method for enforcing a substantive right." Id. The court noted that a party "has no vested or absolute right in procedural matters." Id., quoting State v. Clark, 340 So.2d 208, 220 (La.1976).
PPG argues that this court should find in this case, as it did in Sudwischer, that the retroactive application of newly-adopted statutory language does not divest the plaintiff or the putative class of any vested rights because the change effected by the new language was simply a change in the burden of proof. In support of this argument, PPG notes that La.Rev.Stat. 9:2800(H) contains an exception for gross negligence and willful or wanton misconduct. Thus, PPG argues the amendment simply changed the burden of proof from ordinary negligence to gross negligence and willful or wanton conduct. The State of Louisiana, which has a substantial stake in this case, did not join PPG in setting forth this argument.
We disagree with PPG's argument. Black's Law Dictionary 209 (8th ed.2004) defines "burden of proof" generally as "[a] party's duty to prove a disputed assertion or charge." Black's entry for "burden of proof" also includes this definition of "middle burden of proof": "A party's duty to prove a fact by clear and convincing evidence. This standard lies between the preponderance-of-the-evidence standard and the beyond-a-reasonable-doubt standard." Id. The following quote also appears in Black's "burden of proof" entry:
The expression "burden of proof" is tricky because it has been used by courts and writers to mean various things. Strictly speaking, burden of proof denotes the duty of establishing by a fair preponderance of the evidence the truth of the operative facts upon which the issue at hand is made to turn by substantive law. Burden of proof is sometimes used in a secondary sense to mean the burden of going forward with the evidence. In this sense it is sometimes said that a party has the burden of countering with evidence a prima facie case made against that party.
Id. (quoting William D. Hawkland, Uniform Commercial Code Series § 2A-516:08 (1984)).
Thus, even though the term "burden of proof" to is used to refer to "various things," the term technically applies only to the three levels of burden of proof that are recognized by courts  i.e., (1) preponderance of the evidence, (2) clear and convincing evidence, and (3) beyond a reasonable doubt. These are the three levels of burden of proof recognized by Louisiana courts. Even though one might imprecisely refer to a plaintiff's burden of proving ordinary negligence, as opposed to proving gross negligence, as the plaintiff's "burden of proof," that term does not technically apply.
This conclusion is supported by the fact that the change in the law effected by 2006 La. Act. 545, which added La.Rev. Stat. 9:2800(H), cannot be classified as "procedural." "Substantive laws are laws that impose new duties, obligations or responsibilities upon parties, or laws that `establish new rules, rights and duties or change existing ones.'" Sudwischer, 97-0785 *810 at 9, 705 So.2d at 729 (quoting Manuel v. La. Sheriff's Risk Mgmt. Fund, 95-0406 (La.11/27/95), 664 So.2d 81, 86). The change effected by the new statutory language is clearly substantive because, unlike the statutory change in Sudwischer, the statutory change eliminated the causes of action under La. Civ.Code arts. 2317 and 2317.1 that had existed at the time the plaintiff's claim accrued, as demonstrated below.
La. Civ.Code art. 2317 makes a person liable for damages "caused by the act of persons for whom [the defendant is] answerable, or of the things which [he has in his] custody," while La. Civ.Code art. 2317.1 imposes liability "upon a showing that [the defendant] knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care." However, under La.Rev.Stat. 9:2800(H) "no person shall have a cause of action" based upon liability imposed under Civil Code Articles 2317 and 2317.1 against a public entity for any damages arising from hurricanes Katrina or Rita (emphasis added). The fact that the statute provides an exception in cases where the plaintiff can prove gross negligence or willful and wanton misconduct does not mean that the only effect of 2006 La. Act 545 was a procedural change in the burden of proof under La. Civ.Code arts. 2317 and 2317.1. Indeed, 2006 La Act 545 established a new rule, making it substantive under the definition set forth by this court in Manuel and Sudwischer. Despite the existence of the exception, the effect of 2006 La. Act 545 is to eradicate a large portion of the liability that could otherwise have been imposed on public entities for damages caused by Hurricane Katrina. For the foregoing reasons, we find no merit to PPG's argument that 2006 La. Act 545 did not divest the plaintiffs of any vested rights, but merely changed the plaintiffs' burden of proof.
In its amicus curiae brief, the State of Louisiana makes two primary arguments. First, the State notes that a strong presumption exists that acts of the Louisiana Legislature are constitutional. State v. All Property & Casualty Ins. Carriers Authorized & Licensed to do Business in the State of Louisiana, 06-2030, p. 6 (La.8/25/06), 937 So.2d 313, 319. According to the State, the presumption of constitutionality is particularly forceful in cases involving laws enacted to promote a public purpose, such as 2006 La. Act 545. In support of this argument, the State cites Bd. of Dirs. of La. Recovery Dist. v. All Taxpayers, Prop. Owners, etc., 529 So.2d 384 (La.1988).
As the State correctly argues, statutory enactments of the Louisiana Legislature are presumed to be constitutional. However, that presumption may be rebutted. When a case involves retroactive application of a newly-adopted statute, the standard for rebutting the presumption of constitutionality is that set forth by this court in numerous cases, including Bourgeois II and the cases cited therein. The presumption of constitutionality of a legislative enactment must yield to the well-recognized principle that a "plaintiff cannot be deprived of his [vested] right by mere legislative action." Id. at 10, 783 So.2d at 1259. As we have already found, the retroactive application of 2006 La. Act 545 to this case would unconstitutionally divest the plaintiff and the class members of their vested rights that accrued prior to the effective date of the act. Thus, we find that the State's argument that the statute in question must be presumed constitutional provides no support for finding that 2006 La. Act 545 can be *811 constitutionally applied to the claims asserted herein.
Second, the State argues that 2006 La. Act 545 does not divest plaintiff of any substantive rights because it was enacted under the police powers of the State of Louisiana for a legitimate public purpose  i.e. to ensure the general welfare of the State's citizens. The State asserts that the core of due process "is protection from arbitrary and unreasonable action and when the ordinance or statute does not affect fundamental rights, but rather is merely economic or social regulation, it need only have a rational relationship to a legitimate interest." Progressive Sec. Ins. Co. v. Foster, 97-2985, p. 22 (La.4/23/98), 711 So.2d 675, 688 (emphasis added). The problem with the State's argument is that we have already found that 2006 La. Act 545, adopting La.Rev.Stat. 9:2800(H), would affect the vested rights of the plaintiff and the putative class members in this case, if it were to be applied retroactively to their claims that had accrued, been filed, and were pending prior to the effective date of the provision. In Sudwischer, this court specifically stated that even "procedural laws are not accorded retroactive effect where such retroactivity would operate unconstitutionally to disturb vested rights" (emphasis added). 97-0785 at 10, 705 So.2d at 729. Clearly, the changes effected by 2006 La. Act 545 are not "merely economic or social regulation [which] need only have a rational relationship to a legitimate interest." Foster, 97-2985 at p. 22, 711 So.2d at 688. The crucial difference between this case and the Foster case cited by the State of Louisiana is the fact that this case involves an attempt to apply retroactively newly adopted statutory language to previously filed claims by an identifiable plaintiff individually, and on behalf of a class of plaintiffs, to which application of the statute would violate their constitutional substantive due process rights. The Foster case involved a simple declaratory judgment action seeking a finding that a legislative enactment was unconstitutional on its face. Foster did not involve retroactive application of new statutory language to previously-filed claims.
As the Foster case reveals, the fact that a legislative enactment is rationally related to a legitimate government purpose or was made under the police power of the state is an important consideration when a court reviews newly-enacted "social or economic regulation." Id. Moreover, the question of whether a legislative enactment is a legitimate exercise of the State's police power is in some cases balanced against a person's substantive due process rights, particularly in cases involving "the inherent need of governments to protect the safety and welfare of their citizens from the unrestrained liberty of some individuals." State v. Edwards, 00-1246 (La.6/1/01), 787 So.2d 981, 992 (quoting Nowak, Constitutional Law 389 (1978) (citing Corwin, Liberty Against Government 72 (1948))). Further, the equal protection analysis employed by this court includes in the second tier of scrutiny consideration of whether a classification based on birth, age, sex, culture, physical condition, or political ideas or affiliations has a reasonable basis. State v. Expunged Record (No.) 249,044, 03-1940, p. 9 (La.7/2/04), 881 So.2d 104, 110 (citing Sibley v. Bd. of Sup'rs of La. State Univ., 477 So.2d 1094, 1107 (La.1985)). Whether the police powers of the state should be considered in a case involving a legislative enactment that divests plaintiffs of vested rights has apparently not been addressed directly by this court, presumably because it has never before been raised as an issue in cases before the court.
Nevertheless, a review of this court's decisions in Austin, Bourgeois II, and the *812 cases they rely on, indicates that consideration of whether a legislative enactment qualifies as a legitimate exercise of police power is not one of the factors considered by this court in cases involving the retroactive application of newly adopted statutes to divest plaintiffs of vested rights. Instead, our decision in Bourgeois II is based primarily on the principle that "[r]etroactive application of new legislation is constitutionally permissible only if it does not result in impairment of the obligations of contracts or in divesture of vested rights," and principles derived therefrom. Bourgeois II, 00-1528 at 7, 783 So.2d at 1257 (quoting Yiannopoulos, Louisiana Civil Law Treatise, § 10 (3d ed.1991)); see also Austin, 01-1598 at 11, 824 So.2d at 1145. This court has consistently found that "statutes enacted after the acquisition of . . . a vested property right . . . cannot be retroactively applied so as to divest the plaintiff of his vested right in his cause of action because such a retroactive application would contravene the due process guaranties," Faucheaux v. Alton Ochsner Med. Found. Hosp. & Clinic, 470 So.2d 878, 879 (La.1985), without considering whether the adoption of the statute was within the state's police power.
In this case, as we have found, the retroactive application of La.Rev.Stat. 9:2800(H), adopted by 2006 La. Act 545, would unconstitutionally divest the plaintiff and the putative class of vested rights. Accordingly, to the extent that it holds that 2006 La. Act 545 would be unconstitutional if applied to the accrued, pending claims of the plaintiff and/or the putative class, the district court judgment is correct.

DECREE
The district court correctly found that La.Rev.Stat. 9:2800(H), adopted by 2006 La. Act 545, applies to the causes of action under La. Civ.Code arts. 2317 and 2317.1 asserted in this case. The district court also correctly found that La.Rev.Stat. 9:2800(H), adopted by 2006 La. Act 545, is unconstitutional if made applicable to the pending, accrued, vested causes of action asserted by plaintiff and the class he represents. Accordingly, we affirm the district court judgment denying the PPG's exception of no cause of action. The case is remanded to the district court for further proceedings.
DENIAL OF EXCEPTION OF NO CAUSE OF ACTION AFFIRMED; CASE REMANDED.
VICTORY and TRAYLOR, JJ., dissent and assign reasons.
VICTORY, J., dissenting.
I dissent from the majority opinion holding that the application of La. R.S. 9:2800(H) to plaintiffs' claims would unconstitutionally divest the plaintiffs of vested rights. I disagree with the majority's statement that "the statutory change at issue here eliminated the causes of action under La. Civ.Code arts. 2317 and 2317.1 that existed at the time the plaintiff's claim accrued." Slip Op. at 19. The plaintiffs still have a cause of action under those code articles, they simply have to prove that the defendants committed gross negligence or willful and wanton misconduct in connection with articles 2317 and 2317.1. Further, they still only have to prove ordinary negligence in connection with their claim under 2315.
In my view, while this case does not technically involve what we think of as a "burden of proof," as did Sudwischer v. Estate of Hoffpauir, 97-0785 (La.12/12/97), 705 So.2d 724, it is analogous to the case relied on in Sudwischer in approving its retroactive application. In Ardoin v. Hartford Accident and Indemnity, Co., 360 So.2d 1331 (La.1978), this Court approved *813 the retrospective application of a statute which changed the defendant's standard of care in a medical malpractice case. In Ardoin, the decedent died after heart by-pass surgery because the perfusion tube malfunctioned. Subsequent to the surgery and death, the Legislature enacted La. R.S. 9:2794, which provided that non-specialists were held to the degree of care practiced by other doctors in the same locality, while specialists were held to the degree of care practiced by other specialists, even if not practicing in the same locality. The trial court disallowed testimony from a specialist in another locality who would have testified that the proper standard of care was for the specialist to test the perfusion tube before inserting it into the patient, which the defendant did not do. The specialists in the same locality testified that the doctor was not required to test the perfusion tube and the court found in favor of the doctor. This Court granted the writ to determine whether 9:2794 "applies to quasi-offenses occurring before its effective date." 360 So.2d 1331. In holding that the statute applied retrospectively to this cause of action which had already accrued, this Court held:
Applying these principles to La. R.S. 9:2794, we conclude that the statute should be given retrospective effect. To the extent that the statute establishes a burden of proof in malpractice actions, it clearly should be characterized as procedural and therefore applied to pre-existing facts and relations. Insofar as the statute describes a standard of conduct, it merely determines more precisely the meaning of certain kinds of fault by certain classes of defendants, i.e., professional negligence, imprudence and want of skill by medical generalists and specialists, who were originally responsible for damage occasioned by such fault under Articles 2315 and 2316.
Id. at 1339 (Emphasis added).
In my view, this case is more akin to Ardoin, in that it "establishes a burden of proof," and "describes a standard of conduct." Like in Ardoin, the standard of care that the plaintiffs must prove was changed after the cause of action accrued, yet the Court in Ardoin found that no one was divested of any vested rights and the statute was given retrospective effect. That is exactly the situation we have here. Plaintiffs still have a cause of action under La. C.C. arts. 2317 and 2317.1, they just must prove that defendant's breached a higher standard of case. And, while this is not technically a "burden of proof" in the sense that proving something by a preponderance of the evidence is, in Ardoin, this Court characterized it as a burden of proof and this was relied on heavily in Sudwischer.
Finally, while the majority characterizes the issue to be decided as "whether La.Rev.Stat. 9:2800(H) may be retroactively applied to plaintiff and the class, whose claims had been filed and were pending on the effective date of the statute," under the majority's analysis, this statute cannot be applied to anyone who suffered damages arising from Hurricane Katrina and Rita under Articles 2317 and 2317.1 prior to June 22, 2006, regardless of whether those persons had pending claims prior to June 22, 2006. Realistically, anybody who has a claim against a public entity arising from the hurricanes under Articles 2317 and 2317.1 suffered damages prior to June 22, 2006 and thus their claims have accrued and their rights vested. Thus, under the majority's opinion, the statute can never be given any effect.
For the reasons stated above, I respectfully dissent.
*814 TRAYLOR, J., dissenting.
I agree with Justice Victory that the application of La. R.S. 9:2800(H) to the plaintiffs' claims does not eliminate the plaintiffs' vested rights. As we stated in Ardoin v. Hartford Accident and Indemnity Co., 360 So.2d 1331, 1339 (La.1978), "[t]o the extent that the statute establishes a burden of proof . . ., it clearly should be characterized as procedural and . . . applied [retroactively]. Insofar as the statute describes a standard of conduct, it merely determines more precisely the meaning of certain kinds of fault . . ." Here, the statute requires that plaintiffs prove that the defendant's fault, if any, reached the level of gross negligence or willful and wanton misconduct, rather than mere ordinary negligence.
NOTES
[1] Although the plaintiff alleged that PPG is "strictly liable" under La. Civ.Code arts. 2317 and 2317.1, inter alia, this court has recognized that, with its adoption of La. Civ.Code art. 2317.1 to require knowledge or constructive knowledge, "the Legislature effectively eliminated strict liability under Article 2317, turning it into a negligence claim." Lasyone v. Kansas City Southern R.R., 00-2628, p. 6 (La.4/3/01), 786 So.2d 682, 689, fn. 9 (quoting Frank L. Maraist & Thomas C. Galligan, Louisiana Tort Law § 14-2, at 330-32 (1996)). Thus, plaintiff's claims under La. Civ.Code arts. 2317 and 2317.1 are not technically strict liability claims.
[2] The listed codal articles deal with the following topics: La. Civ.Code art. 660  "Keeping buildings in repair"; La. Civ.Code art. 2317  "Acts of others and of things in custody"; La. Civ.Code 2317.1  "Damage caused by ruin, vice, or defect in things"; La. Civ. Code art. 2322  "Damage caused by ruin of building"; La Civ.Code art. 2692  "Lessee's obligation to make repairs"; La Civ.Code art. 2693  "Lessor's right to make repairs"; and La. Civ.Code art. 2695  "Attachments, additions, or other improvements to leased thing."
[3] La. Civ.Code art. 2315, relative to "liability for acts causing damages," provides as follows:

A. Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
B. Damages may include loss of consortium, service, and society, and shall be recoverable by the same respective categories of persons who would have had a cause of action for wrongful death of an injured person. Damages do not include costs for future medical treatment, services, surveillance, or procedures of any kind unless such treatment, services, surveillance, or procedures are directly related to a manifest physical or mental injury or disease. Damages shall include any sales taxes paid by the owner on the repair or replacement of the property damaged.
[4] At the May 8, 2007, hearing, plaintiff stated that a motion amending the original petition to strike the allegations of liability based on La. Civ.Code arts. 2692 through 2695, which are all based on a landlord-tenant relationship, would be appropriate. It does not appear that the petition has been formally amended. Nevertheless, plaintiffs's allegations arising out of La. Civ.Code arts. 2692 through 2695 are not at issue in this appeal and will not be further discussed herein.
[5] Plaintiff actually filed two different pleadings opposing PPG's exception of no cause of action on October 30, 2006. In addition to the motion described above, plaintiff filed an "Opposition Memorandum with Respect to the Exception of No Cause of Action," asserting that application of La. R.S. 9:2800(H) to these proceedings would "unconstitutionally divest the proposed class of victims of their vested property rights and thus violate the state and federal constitutions." Plaintiff further argued that La.Rev.Stat. 9:2800(H) does not apply to these pending proceedings because the Act does not so state. However, this court has held that the unconstitutionality of a statute must be raised in a pleading (i.e., a petition, an exception, a motion or an answer), and that the unconstitutionality of a statute cannot be raised in a memorandum, opposition, or brief because those documents are not pleadings. Meaux v. Galtier, 07-2474, P. 2 (La. 1/25/08), 972 So.2d 1137, 1138, quoting Vallo v. Gayle Oil Company, Inc., 94-1238, p. 8 (La.11/20/94), 646 So.2d 859, 864-65. Thus, we do not discuss plaintiff's memorandum challenging the constitutionality of La.Rev.Stat. 9:2800(H) here.
[6] La.Code Civ. Proc. art. 1880, relative to "parties" in an action for declaratory relief, provides, in pertinent part, that, "[i]f the statute, ordinance, or franchise is alleged to be unconstitutional, the attorney general of the state shall also be served with a copy of the proceeding and be entitled to be heard." Unfortunately, the record in this case contains no evidence to indicate that the Louisiana Attorney General was in fact served with a copy of plaintiff's "Motion Opposing the Application of Acts 2006, No. 545 to this Litigation," as required by La.Code Civ. Proc. art. 1880. The district court was sufficiently concerned about this omission that, following the first hearing on PPG's exception of no cause of action, held on November 9, 2006, he issued an order that reset the exception for hearing on March 8, 2007, and ordered the plaintiff "to serve the AG with notice of hearing and to file appropriate pleadings raising the unconstitutionality of Act 545 of the 2006 session of the Louisiana Legislature." That judgment was signed on January 18, 2007. At the March 8, 2007, hearing, the district court commented on the fact that the record contained no evidence that the Attorney General had been served. When the attorneys for the parties assured him that the Attorney General had been properly notified, the district court proceeded with the hearing on the exception.

Clearly, the better practice would be for the party raising the unconstitutionality of a statute to present record evidence to show that the Attorney General has been served with of a copy of the pleading raising the constitutionality issue. However, in this case, the Attorney General filed a "Request for Notice" on December 11, 2006, and the "State of Louisiana's Article 1880 Memorandum in Support of the Constitutionality of Act 545 of the 2006 Regular Session of the Louisiana Legislature" on February 16, 2007, prior to the second hearing on the exception of no cause of action. The Attorney General's reference to "Article 1880" in his memorandum indicates his belief that the requirements of the article had been met. Further, in his original brief to this court as amicus curiae, the Attorney General stated that his office "received a copy of the court's [January 18, 2007] order, with all applicable motions." Accordingly, we find that the purpose of the requirement of La.Code Civ. Proc. art. 1880 that the Attorney General be served with the pleading raising the constitutionality of a statute has been served in this case, in light of the fact that the Attorney General was afforded the necessary opportunity to be heard as the codal article requires.
[7] This court's per curiam decision indicates that the "State of Louisiana" invoked this court's appellate jurisdiction to review the district court's original judgment. Burmaster v. Plaquemines Parish Gov't, 97-1311, p. 1, 963 So.2d 378, 378. However, the record indicates that it was PPG that invoked this court's appellate jurisdiction.
[8] La. Const. art. V, § 5(D) declares that "a case shall be appealable to the supreme court if . . . a law or ordinance has been declared unconstitutional."
[9] We have reviewed the available legislative history of 2006 La. Act 545, but found nothing to explain the legislature's inclusion of the word "solely" in the provision.
[10] Our holding in this case does not apply to any damages suffered by the plaintiff or the class members that occurred after June 22, 2006, the effective date of 2006 La. Act 545.