# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #028

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinion handed down on the **12th day of June, 2024** is as follows:

**BY Weimer, C.J.:**

**2023-CC-01194**   ***DOUGLAS BIENVENU, ET AL.   VS.   DEFENDANT 1 AND DEFENDANT 2 #87184   C/W   JOHN DOE, ET AL.   VS.   DEFENDANT 1 AND DEFENDANT 2 #87515 (Parish of St. Martin)***

ORIGINAL DECREE VACATED; DISTRICT COURT JUDGMENT AFFIRMED; REMANDED.

Hughes, J., dissents for the reasons previously given and the reasons of Genovese, J.

Crichton, J., additionally concurs and assigns reasons.

Genovese, J., dissents and assigns reasons.

Griffin, J., concurs in the result and assigns reasons.

# SUPREME COURT OF LOUISIANA

## No. 2023-CC-01194

## DOUGLAS BIENVENU, ET AL.

## VS.

## DEFENDANT 1 AND DEFENDANT 2 #87184

## C/W

## JOHN DOE, ET AL.

## VS.

## DEFENDANT 1 AND DEFENDANT 2 #87515

*On Supervisory Writ to the 16th Judicial District Court, Parish of St. Martin*

## ON REHEARING

**WEIMER, C.J.**

The court granted rehearing to address the plaintiffs' contention that the original opinion erred in employing a truncated due process analysis to reach the conclusion that the revival provisions of Section 2 of 2021 La. Acts 322 and Section 2 of 2022 La. Acts 386 are unconstitutional. Following a careful review of our original decision in this case in light of the arguments of all parties on rehearing, and for the reasons expressed below, the court vacates the original opinion declaring the revival provisions of Sections 2 of Acts 322 and 386 unconstitutional. Consistent with the views expressed herein, we affirm the ruling of the district court overruling the exception of prescription and the district court's concomitant finding that Act 322, as interpreted by Act 386, is constitutional and applies retroactively to revive all

causes of action related to sexual abuse of a minor that previously prescribed under any Louisiana prescriptive period.

## ANALYSIS[1]

The question posed in this case is whether the legislature has the authority, consistent with the due process guarantee of the Louisiana constitution, to revive a prescribed cause of action for sexual abuse of a minor.

Because our Civil Code and the revised statutes contemplate, and implicitly sanction, the enactment of laws having retroactive effect,[2] whenever the question of retroactivity arises, we typically begin our analysis with a two-fold inquiry. **M.J. Farms, Ltd. v. Exxon Mobil Corp.**, 07-2371, p. 18 (La. 7/1/08), 998 So.2d 16, 29. The first step involves determining whether the legislature expressed an intent concerning the retroactive or prospective application of the law. If the legislature did express such an intent, this part of the inquiry is at an end. If, however, no intent is expressed by the legislature, then that intent must be discerned by classifying the law as either substantive, procedural, or interpretive. **Id.**

In this case, the legislature's intent to apply the amended provisions of La. R.S. 9:2800.9 retroactively by reviving previously prescribed claims is clearly and explicitly stated in Act 386. ("It is the express intent of the legislature to revive until June 14, 2024, any cause of action related to sexual abuse of a minor that previously

---

[1] The facts and procedural history of this case have been set forth in the court's original opinion and, therefore, will not be repeated here.

[2] La. C.C. art. 6 provides:

> In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.

La. R.S. 1:2 similarly provides: "No section of the Revised Statutes is retroactive unless it is expressly so stated."

2

prescribed under any Louisiana prescriptive period.") Therefore, as to this first step of the inquiry, the conclusion is unassailable: the legislature intended retroactive application of the law.[3]

Of course, that conclusion does not end the inquiry, as the defendants maintain that retroactive application of the amended statute would unconstitutionally divest them of a vested property right to claim the accrued defense of liberative prescription. Plaintiffs counter, arguing that the right to claim liberative prescription is not a vested right and that, even if it does form a vested property right, the revival provisions in the Act are nevertheless constitutional.

As the original opinion explains, "[a] right is vested when 'the right to enjoyment, present or prospective, has become the property of some particular person or persons as a present interest. The right must be absolute, complete and unconditional, independent of a contingency, and a mere expectancy of future benefit ... does not constitute a vested right." **Ebinger v. Venus Const. Corp.**, 10-2516, pp. 8-9 (La. 7/1/11), 65 So.3d 1279, 1286 (quoting **Sawicki v. K/S Stavanger Prince**, 01-0528, p. 10 (La. 12/7/01), 802 So.2d 598, 604 (ellipses in original)). Consistent with this definition, the court has determined that when a party acquires a right to defend against a cause of action, that right becomes a vested property right. **Falgout v. Dealers Truck Equipment Co.**, 98-3150, pp. 11-12 (La. 10/19/99), 748 So.2d 399, 407.

The rationale for this conclusion can be found in the civil law tradition and in the Civil Code articles themselves. Louisiana Civil Code article 3447 defines liberative prescription as "a mode of barring actions as a result of inaction for a

---

[3] Because plaintiffs' action was pending on the effective date of La. Act 386, the revival provisions of that Act apply to plaintiffs' claims. See, **Segura v. Frank**, 93-1271, p. 19 (La. 1/14/94), 630 So.2d 714,727.

period of time." While prescriptive periods relate to the remedy and are usually treated as procedural rather than substantive, the effect of prescription, once it accrues, is set forth in Comment (b) to La. C.C. Art. 3447: "liberative prescription is not merely a mode of discharging debts; it is a mode of extinguishing claims." This is confirmed by La. C.C. art. 1762(1), stating that "[w]hen a civil obligation has been extinguished by prescription," a natural obligation remains, but such an obligation "is not enforceable by judicial action." La. C.C. art. 1761. In **Louisiana Health Service and Indem. Co. v. McNamara**, 561 So.2d 712 (La. 1990), the court explained:

> Unlike statutes of limitations at common law, which are merely procedural bars to the enforcement of obligations, civilian prescriptive periods act to extinguish the civil obligation to which they apply. The patrimony of the obligor is increased when a claim prescribes, and his right to plead prescription in defense to a claim on the obligation is itself property that cannot be taken from him.

*Id.*, 561 So.2d at 718. Thus, while the defendant does not acquire anything during the time period during which prescription is running,[4] once the prescriptive period has elapsed, the law grants the defendant the right to plead the exception of prescription in order to defeat the plaintiff's claim. La. C.C.P. arts. 927 & 934. The right to claim this acquired defense is a substantive property right. See, **Chance v. American Honda Motor Co., Inc.**, 93-2582 (La. 4/11/94), 635 So.2d 177, 178. This right "vests" upon the expiration of the prescriptive period, and as a vested property right, it is protected by the due process guarantees. **Falgout**, 98-3150 at 12, 748 So.2d at 407 ("When a party acquires a right, either to sue for a cause of action or to defend

---

[4] It is true, as plaintiffs maintain, that because prescription can be renounced, interrupted, or suspended, and because *contra non valentem* applies as an exception to suspend prescription where in fact and for good cause a plaintiff is unable to exercise his cause when it accrues, prescription is an inchoate right. See, **Hebert v. Doctors Memorial Hosp.**, 486 So.2d 717, 723 (La. 1986). However, the incomplete nature of the right ceases once prescription accrues.

4

himself against one, that right becomes a vested property right and is protected by the due process guarantees.").

In concluding (1) the legislature clearly expressed its intent that the amended provisions of La. R.S. 9:2800.9 apply retroactively to revive previously prescribed claims, and (2) when a party acquires the right to plead the defense of liberative prescription, that right becomes a vested property right protected by the constitution's due process guarantees, we are thus far in accord with the analysis in the original opinion. Where we depart from the original opinion, and what prompted the grant of rehearing in this matter, is regarding the next step in the constitutional analysis: the determination as to whether the legislature's revival of prescribed causes of action for sexual abuse of minors comports with substantive due process.[5]

In their rehearing application, the plaintiffs aver that the court erred in relying on *dicta* from previous decisions to find there was no need to conduct a substantive due process analysis. The defendants counter, arguing that such an analysis is not necessary because the court has not previously applied a substantive due process test when considering the constitution's protection of vested rights.

The defendants' argument with respect to substantive due process in the context of vested rights is generally accurate. The court, with one exception,[6] has not previously conducted a substantive due process analysis when considering the retroactivity of newly enacted legislation that would have the effect of divesting a

_____

[5] While due process has two components–procedural and substantive–only substantive due process is implicated in this case. See, **Logan v. Zimmerman Brush Co.**, 455 U.S. 422, 433 (1982) (As regards procedural due process, when legislation is at issue, "the legislative determination provides all the process that is due."); **Messina v. St. Charles Par. Council**, 03-644, p. 5 (La.App. 5 Cir. 12/30/03, 865 So.2d 158, 161, writ denied, 04-0285 (La. 3/26/04), 871 So.2d 354 ("[W]hen a governmental action is characterized as legislative, procedural due process requirements do not apply.").

[6] See footnote 9, *infra*.

party of vested rights. However, as the decision of this court in **Burmaster v. Plaquemines Parish Government**, 07-2432 (La. 5/21/08), 982 So.2d 795, reveals, the reasons that have been advanced for the court's failure to engage in such an analysis are hardly compelling. In **Burmaster**, the court acknowledged that the issue was *res nova*, noting that "[w]hether the police powers of the state should be considered in a case involving a legislative enactment that divests plaintiffs of vested rights has apparently not been addressed directly by this court, presumably because it has never before been raised as an issue in cases before the court." *Id.*, 07-2432 at 23, 982 So.2d at 811. Inexplicably, however, after acknowledging the issue as *res nova*, the court went on to conclude that, because the court had not engaged in the substantive due process analysis before in considering vested rights, it must not be necessary to do so at all. *Id.*, 07-2432 at 23, 982 So.2d at 811-12. ("[A] review of this court's decisions in *Austin, Bourgeois II*, and the cases they rely on, indicates that consideration of whether a legislative enactment qualifies as a legitimate exercise of police power is not one of the factors considered by this court in cases involving the retroactive application of newly adopted statutes to divest plaintiffs of vested rights. ... This court has consistently found that 'statutes enacted after the acquisition of ... a vested property right ... cannot be retroactively applied so as to divest the plaintiff of his vested right in his cause of action because such a retroactive application would contravene the due process guaranties,' without considering whether the adoption of the statute was within the state's police power.") (citations omitted). This explanation for failing to address the *res nova* issue presented is not only logically faulty, it fails to acknowledge the parameters of the express provision in the constitution that protects vested rights: the due process clause.

6

The logical consequence of **Burmaster**'s holding is far-reaching. In essentially declaring that *any* interference with vested rights under *any* circumstances violates due process and is therefore unconstitutional, **Burmaster** effectively elevates vested property rights (which are purely economic rights) above all other rights, including such fundamental rights as the rights to privacy, to free speech, and to freedom of religion and from racial discrimination. Furthermore, it does so without explaining or examining why such a result is warranted under the very provision of the constitution that is purported to extend such protection–the due process clause.[7]

The premise of **Burmaster** and similar cases on which that decision rests is that vested rights merit heightened scrutiny under the constitution and, as a result, any interference with vested rights is *per se* arbitrary and unreasonable and, thus, constitutionally prohibited. Defendants suggest that the justification for such heightened scrutiny is demonstrated in this court's decision in **Elevating Boats, Inc. v. St. Bernard Par.**, 00-3518 (La. 9/05/01), 795 So.2d 1153, <u>overruled on other</u>

---

[7] Admittedly, the court in **Burmaster** was correct in its assertion that numerous decisions of the court recite the proposition that vested rights are protected by the due process clause of the constitution and cannot, consistent with that guarantee, be disturbed, without taking the next step and examining whether the legislation in question, in fact, comports with due process. However, it appears that rather than a considered decision to afford unqualified and categorical protection to vested rights under the due process clause, this language is most likely a concept carried over from language in the 1921 Constitution. That constitution, in Article IV, § 15, entitled "Limitations," provided: "No ex-post facto law, nor any law impairing the obligation of contracts, shall be passed; nor shall vested rights be divested, unless for purposes of public utility, and for just and adequate compensation previously paid." This language does not appear in the current constitution. In fact, an amendment adding language prohibiting the divestiture of vested rights was defeated at the convention.

It has been suggested that the omission of any reference to vested rights in the 1973 Constitution was not a substantive change because vested rights are included under the broad definition of "life, liberty or property," in La. Const. Art. 1, § 2. Lee Hargrave, *The Declaration of Rights of the Louisiana Constitution of 1974*, 35 La. Law Rev. 1, 5-6 (1974). Whether a substantive change or not, it is clear that to the extent vested rights are protected in the current constitution, that protection is extended through the due process guarantee. Thus, once a vested right is found to exist, a due process analysis is required.

**Anthony Crane Rental, L.P. v. Fruge**, 03-0115 (La. 10/21/03), 859 So.2d

631. Drawing on Planiol, the court in **Elevating Boats** explained:

> [A]fter the prescriptive period on an obligation has run, an obligor gains the *right* to plead prescription. In such a situation, that *right* to plead prescription has already accrued and application of a lengthened period to revive the obligation, and effectively remove the right to plead prescription, would "modify or suppress the effects of a right already acquired."

**Elevating Boats**, 00-3518 at 14, 795 So.2d at 1164 (quoting 1 MARCEL PLANIOL, TREATISE ON THE CIVIL LAW, § 243 (12th ed. 1939)). Based on this proposition, the court then went on to declare: "Thus, we have noted that the Legislature is without the authority to revive a prescribed claim." ***Id.***

With all due respect to that analysis, this reading of Planiol is incomplete and does not support the conclusion for which it is cited. What Planiol is discussing is the general principle of non-retroactivity of laws. Planiol writes that, as a *general rule*, laws are not applied retroactively. He goes on to state that there are exceptions, however:

> Certain laws, as exceptions to the rule, produce their effect retroactively and apply to old facts, regardless of their date. This is so in three cases: 1st, *when the law-maker has expressly so declared*; 2nd, when the law is interpretive; and 3rd when it is a penal law which suppresses or lessens a penalty." [Emphasis added.]

Planiol, § 249. Moreover, and more importantly, as Planiol further explains, the principle of non-retroactivity is a rule of interpretation for the judiciary. It is not a rule of constitutional law, nor is it inviolate.

> The principle of non-retroactivity is not a principle of constitutional law which binds the law-maker himself. It is set forth in an ordinary law, that is to say in Art. 2 of the Civil Code. It, therefore, may be superseded by another law. But the legal rule is binding upon the courts. There would be an error which would entail "reversal" for violation of Art. 2, if a court were to give retroactive effect to a law. The principle is thus effective solely in regard to the interpretation of

laws. The law-maker remains free, when he so desires, to give retroactive effect to the provisions he decrees.

Planiol, § 250.

Thus, as Planiol explains, the rule of non-retroactivity is not a rule of constitutional dimension. The legislature is free to enact laws which operate retroactively as long as those laws do not violate the limits imposed on the legislature through the constitution. In this case, those limits are the ones imposed through La. Const. Article I, § 2, the due process clause, and the constitutionality of the legislation in question must be evaluated through the lens of that provision.[8] To the extent that **Burmaster** suggests otherwise, it is overruled.[9]

A proper analysis of the issue acknowledged, but not adequately addressed in **Burmaster**, starts with the well-established principle that "[b]ecause the provisions

---

[8] On original hearing, the court expressed reluctance to upend "nearly half of a century's jurisprudence that recognizes the unique nature of vested rights associated with liberative prescription," alluding to the civilian doctrine of *jurisprudence constante* as the impetus for its decision. While it is accurate that a series of decisions forming a constant stream of uniform and homogenous rulings having the same reasoning may attain the status of *jurisprudence constante*, the doctrine merely "accords the cases considerable persuasive authority and justifies, without requiring, the court in abstaining from new inquiry because of its faith in the precedents." James L. Dennis, *Interpretation and Application of the Civil Code and the Evaluation of Judicial Precedent*, 54 La. L.Rev. 1, 15 (1993). Ultimately, the doctrine of *jurisprudence constante* counsels that the court should be deferential to, but is not bound by precedent, especially where, as demonstrated above, the reasoning on which the prior decisions are based is questionable, and the language cited as controlling appears in most instances only as dicta in our opinions.

[9] Our decision in this regard is consistent with the court's decision in **State v. All Property & Cas. Ins. Carriers Authorized & Licensed to Do Bus. In State**, 06-2030 (La. 8/25/06), 937 So.2d 313, a decision which pre-dates Burmaster, but presages our conclusion here. In **All Property**, the court was presented with a contracts clause challenge under La. Const. Art. 1, § 23 to legislation passed in the aftermath of Hurricanes Katrina and Rita that extended the prescriptive period in which individuals could file claims under their insurance policies for hurricane losses. After rejecting the challenge based on the contracts clause, the court likewise denied a due process challenge to the "vested" contractual right of the insurers to assert a one-year prescriptive period using the rational–relationship substantive due process test. **All Property**, 06-2030 at 20, 937 So.2d at 327 n.14 ("Insofar as the defendant insurers claim the imposition of the extended prescriptive period violates constitutional due process concerns, our conclusion that no unconstitutional violation occurred would be the same because the tests are similar. The Supreme Court has held "'[t]he retroactive aspects of [economic] legislation, as well as the prospective aspects, must meet the test of due process': a legitimate legislative purpose furthered by rational means.") (citations omitted). While **All Property** dealt with legislation extending a prescriptive period that had not yet expired, it did recognize the need to conduct a substantive due process analysis when considering "vested" rights.

of the Louisiana Constitution are not grants of power but instead are limitations on the otherwise plenary power of the people, exercised through the legislature, the legislature may enact any legislation that the constitution does not prohibit." **Fruge v. Bd. of Trustees of La. State Employees' Ret. Sys.**, 08-1270, p. 5 (La. 12/2/08), 6 So.3d 124, 128. As a result, "a party challenging the constitutionality of a statute must point to a particular provision of the constitution that would prohibit the enactment of the statute, and must demonstrate clearly and convincingly that it was the constitutional aim of that provision to deny the legislature the power to enact the statute in question." *Id.*, 08-1270 at 5-6, 6 So.3d at 128.

The constitutional provision the defendants point to in this case as protecting absolutely their vested property right to claim the defense of liberative prescription is La. Const. Article I, § 2, which states: "No person shall be deprived of life, liberty, or property, except by due process of law." A plain reading of this provision suggests that no right–whether it be to life, liberty *or property*–is absolutely protected; otherwise, there would be no need for the phrase "except by due process of law." Rather, the guarantee that is extended by the constitution is not unqualified protection, but protection from arbitrary and unreasonable action. **Progressive Security Insurance Co. v. Foster**, 97-2985, p. 22 (La. 4/23/98), 711 So.2d 675, 688; **Babineaux v. Judiciary Comm'n.**, 341 So.2d 396, 400 (La. 1976) ("The essence of substantive due process is protection from arbitrary and unreasonable action."). Indeed, as far back as 1938, the court recognized that rights and privileges guaranteed by the Constitution "cannot be taken from a citizen without the due process of law. But the right to contract, *to own and use property*, is not absolute." **Bd. of Barber Exam'rs of La. v. Parker**, 182 So. 485, 490 (La. 1938) (emphasis added). The court

10

has explained the effect of the police power on the due process rights of individuals as follows:

> Police power is inherent in the state. Under that power the state may enact laws to protect and preserve social order, to restrict and punish crime, to preserve the public peace, to safeguard and protect the health and morals of the people, even though the effect of such laws is to strike down private contracts, to deprive the citizen of his liberty to contract and to take from him or destroy his property. But the legislature is prohibited from enacting such laws except for adequate reasons. If the reasons are not adequate, such legislation violates the due process clauses of the federal and state Constitutions.

**State v. Edwards**, 00-1246, p. 14 (La. 6/1/01), 787 So.2d 981, 992 (citation omitted).

Because the defendants have failed to identify any provision in the constitution that categorically prohibits an exercise of police power where such would impair vested rights, it is not only appropriate, but necessary, that the validity of the revival provision in Act 386 be tested against the due process guarantee. The essence of the due process guarantee is protection from arbitrary and unreasonable action and, where legislation involves social or economic regulation, and does not affect fundamental rights, it need only have a rational relationship to a legitimate governmental interest to survive due process scrutiny. **Med Express Ambulance Service, Inc. v. Evangeline Parish Police Jury**, 96-0543, p. 7-8 (La. 11/25/96), 684 So.2d 359, 365. Here, the interest claimed by defendants is the property interest in the right to plead the defense of accrued liberative prescription, an economic interest that does not implicate fundamental rights.[10] The legislation challenged, which attempts to address the societal costs of child sexual abuse, is social welfare legislation. As a result, the

---

[10] See, **Bazley v. Tortorich**, 397 So.2d 475, 483 (La. 1981) (fundamental rights include: freedom of expression and association, the right to vote, the right to interstate travel, the right to privacy, the right to fairness in the criminal process, the right to fairness in procedures concerning governmental deprivations of life, liberty or property); see also, **Picone v. Lyons**, 601 So.2d 1375, 1376-77 (La. 1992) (quoting **Chase Securities Corp. v. Donaldson**, 325 U.S. 304, 314 (1945)) (Statutes of limitation "represent a public policy about the privilege to litigate. Their shelter has never been regarded as what now is called a 'fundamental' right or what used to be called a 'natural' right of the individual.").

11

applicable due process test is whether the legislation is reasonable in relation to the goal to be attained and is adopted in the interest of the community as a whole. **Bazley v. Tortorich**, 397 So.2d 475, 483 (La. 1981).

Application of that test in this case leads inexorably to the conclusion that the revival provision in the Act is rationally related to a legitimate government interest. As articulated by the main sponsor of the Act in the House, Representative Jason Hughes, the revival provision serves three public purposes: (1) the provision assists in identifying hidden child predators so children will not be abused in the future; (2) shifts the costs of the abuse from the victims and society to those who actually caused it; and (3) educates the public about the prevalence and harm from child sexual abuse to prevent future abuse. See, *May 3, 2021 House Bill 492 Hearing*, 2021 Reg. Sess., pp.6-7. These articulated interests are both legitimate and compelling.

Indeed, as Representative Hughes pointed out during the legislative floor debate, child sexual abuse is a unique tort in which the average victim does not come forward until they are 52 years old. *Id.* For many victims of child sexual abuse, the revival provision represents their first and only opportunity to bring suit. Providing that opportunity to those victims is a legitimate legislative purpose.

It is uniquely the role of the legislature to weigh the myriad policy considerations on both sides of a debate, and in this instance the legislature performed its role, debating the legislation at issue in public forums in two legislative committees, and on the floor of the House and Senate.[11] The legislation passed

_____

[11] In its deliberations, the legislature weighed a multitude of considerations–including problems of proof stemming from the passage of time–and determined that it is in the public interest to identify hidden child predators so as to prevent future abuse, shift the costs of the abuse, and educate the public about the prevalence of the problem. Balanced against concerns over the difficulty of defending claims years after the fact was the recognition that claims for sexual abuse remain difficult to prove and the burden of that proof rests with the claimants. See, Comments of Representative Mike Johnson, *June 10, 2021 House Bill 492 Hearing,* 2021 Reg. Sess., p. 12 ("... I know the concerns that I've heard voiced by some is that it would be difficult to defend cases years and years

unanimously and was signed into law by the Governor. This court's role is not to re-weigh the legislature's policy decision. This court cannot strike down a provision enacted by the legislature unless it is inconsistent with the due process guarantee. Because the crux of substantive due process is protection from arbitrary action by the government, if the propriety of the government authority's action is debatable, there is no due process violation. **State v. Weaver**, 01-0467, p. 10 (La. 1/15/02), 805 So.2d 166, 173. Moreover, it is presumed that the legislature acts within the limits of the constitution, and the party seeking to challenge the constitutionality of a statute bears a heavy burden of proof. **Id.**, 01-0467 at 5; 805 So.2d at 170.

Given Louisiana's legitimate interest in protecting its citizens who were sexually abused as minors and in providing them with the ability to seek redress in the courts, and the narrowly tailored nature of the relief provided–the legislation revives, for a short period of time, for a narrow category of tort victims, actions otherwise prescribed–it is clear that defendants have failed to satisfy the "heavy burden" of proving the unconstitutionality of the revival provision. Under the due process clause, no rights–not even fundamental ones–are absolute. The due process clause simply offers protection from arbitrary and unreasonable action by the

---

later, but it would also be tremendously difficult to prove. So, it's not like you're giving something away to anyone. If they've been harmed, the burden of proof falls on that victim.").

To alleviate concerns expressed over a multitude of potentially frivolous claims, the legislature incorporated strict safeguards into La. R.S. 9:2800.9. Thus, every plaintiff over the age of 21 must file certificates of merit executed by the attorney for the plaintiff and by a licensed mental health practitioner declaring that (1) the attorney has reviewed the facts of the case and consulted with a licensed mental health practitioner and has concluded there is reasonable and meritorious cause for filing the petition; and (2) the mental health practitioner has interviewed the plaintiff and has concluded that in their professional opinion there is a reasonable basis to believe that the plaintiff has been subject to criminal sexual activity during childhood. La. R.S. 9:2800.9(B). Further, until such time as the district court has reviewed the certificates of merit, *in camera*, and determined that there is reasonable and meritorious cause for filing the action, the name of the defendant or defendants may not appear in the petition. La. R.S. 9:2800.9(D).

The considerations weighed by the legislature, and the balance it struck among the concerns voiced, are policy determinations that are uniquely the province of the legislature.

government. The revival provision at issue is not arbitrary (in fact, in this case it is arguable that the "arbitrary and unreasonable" conduct was the alleged sexual abuse perpetrated on children by those in society who were placed in positions of authority). And, the provision has been demonstrated to have a substantial relationship to public safety, morals and welfare. See, **Francis v. Morial**, 455 So.2d 1168, 1172-73 (La. 1984) (To be sustained as a valid exercise of the police power, legislation must tend in some degree to prevent an offense or evil or otherwise preserve public health, morals, safety or welfare). Indeed, when fundamental rights are not involved, "[i]n the area of substantive due process, courts look only to see if a particular legislative measure was a rational way to correct a problem." **Hayden v. Louisiana Public Service Commission**, 553 So.2d 435, 440 (La. 1989). Under this standard, the provision at issue passes constitutional muster.

The defendants' protests notwithstanding, the resolution here will not "open the floodgates" of unrestrained legislative action, as every legislative action must comport with due process. This case is strictly limited to its facts, examining whether a singular legislative act, addressing a particular systemic societal problem, hidden from the public, and impacting children and touching on the public safety, morals and welfare, comports with due process. Each case must be tested on its own unique circumstances. In virtually every case this court is called on to resolve, each party predicts catastrophe and dire consequences should the opposing party prevail. Ultimately, it is this court's role to apply the law to the particular facts presented in the immediate case before us. In future cases, in which the facts differ, the law may well apply differently. In this case, in which the legislature established a window of time for individuals who suffered sexual abuse as minors to sue their alleged abusers and other responsible parties, regardless of when the abuse occurred, and sought

thereby to provide these individuals with a meaningful opportunity for judicial relief, the defendants have not established a constitutional violation under the due process clause.

## CONCLUSION

For the reasons assigned, the court's original decree declaring the revival provisions of Sections 2 of La. Acts 322 and 386 unconstitutional is vacated. We affirm the ruling of the district court overruling the exception of prescription and its determination that Act 322, as interpreted by Act 386, is constitutional and applies retroactively to revive, for the period stated, all causes of action related to sexual abuse of a minor that previously prescribed under any Louisiana prescriptive period. This matter is remanded to the district court for further proceedings consistent with this opinion.

**ORIGINAL DECREE VACATED; DISTRICT COURT JUDGMENT AFFIRMED; REMANDED.**

**SUPREME COURT OF LOUISIANA**

**No. 2023-CC-01194**

**DOUGLAS BIENVENU, ET AL.**

**VS.**

**DEFENDANT 1 AND DEFENDANT 2 #87184**

**C/W**

**JOHN DOE, ET AL.**

**VS.**

**DEFENDANT 1 AND DEFENDANT 2 #87515**

On Supervisory Writ to the 16th Judicial District Court, Parish of St. Martin

**ON REHEARING**

**CRICHTON, J., additionally concurs and assigns reasons:**

In light of the parties' arguments on rehearing, I agree with the majority's conclusion that Act 322, as interpreted by Act 386, is constitutional.

Crucial to my agreement with the majority's holding on rehearing is the decision to overrule *Burmaster v. Plaquemines Parish Government*, 07-2432 (La. 5/21/08), 982 So. 2d 795. *See* Marcel Planiol*, Treatise on the Civil Law*, §§ 243 and 250 (12ᵗʰ ed. 1939) (noting that the principle of non-retroactivity is not a rule of constitutional law and remains in the domain of judicial interpretation); James L. Dennis*, Interpretation and Application of the Civil Code and the Evaluation of Judicial Precedent*, 54 La. L. Rev. 1, 15 (1993) (explaining that the doctrine of *jurisprudence constante* "accords the cases considerable persuasive authority and justifies, without requiring, the court in abstaining from new inquiry because of its faith in the precedents."). As explained by the majority, the Court in *Burmaster*, in relying upon language set forth in the 1921 Louisiana Constitution but not carried over to the 1973 Louisiana Constitution, made a crucial error in seemingly elevating

1

vested property rights above all other rights, including those fundamental constitutional protections of the rights to privacy, free speech, and freedom of religion. I therefore concur in the majority's conclusion that *Burmaster's* reasoning is not only based on an inappropriately broad constitutional analysis, it also ignores the fact that vested rights as protected under the current constitution are subject to curtailment under a due process analysis.

Turning to the merits of that substantive due process analysis under the circumstances of this case, the majority's emphasis that no right is ***absolutely*** protected by our Constitution is eminently correct; otherwise, the phrase "except by due process of law" becomes meaningless. Pursuant to the due process analysis as conducted by the majority herein, I agree that the subject legislation is rationally related to a highly legitimate – and decidedly compelling – government interest. Specifically, the unique and troublesome nature of this tort narrowly frames the set of allegations of a particular societal problem, adversely affecting children at the hands of trusted adults and hidden from the public. [1] Thus, I agree with the opinion's focus that the legislation at issue here has a significant relationship to public safety, morals, and social welfare.

Finally, although we ultimately find that this particularized revival provision survives constitutional scrutiny, it is my view that the legislature should, as always, remain conscious of constitutional implications in any future similar exercises of legislative power or enactments that could divest a party of accrued rights, as "[r]evival is an extreme exercise of legislative power." *Hopkins v. Lincoln Trust*

---

[1] I maintain the view as expressed in my concurrence on original hearing that the theory of *contra non valentem* potentially would have provided relief to some individuals affected by this legislative change, particularly for those who have missed the statutory revival deadline of June 14, 2024. *See, Bienvenu, et al. v. Defendant 1 and Defendant 2 #87184 c/w John Doe v. Defendant 1 and Defendant 2 #87515*, 23-1194 (La. 3/22/24), __ So. 3d __ (Crichton, J., concurring, noting that "Louisiana courts have created and long recognized a jurisprudential exception to prescription known as *contra non valentem non currit praescriptio*, which means that prescription does not run against a person who could not bring his suit." (internal citations omitted)).

2

*Co.,* 223 N.Y. 213, 135 N.E. 267, 267 (1912) (Cordozo, J., writing for the Court of Appeals of New York).

For the reasons explained above, the arguments set forth on rehearing have persuaded me that our ruling today serves the best interests of justice and preserves the sanctity of future constitutional analyses.

**SUPREME COURT OF LOUISIANA**

**No. 2023-CC-01194**

**DOUGLAS BIENVENU, ET AL.**

**VS.**

**DEFENDANT 1 AND DEFENDANT 2 #87184**

**C/W**

**JOHN DOE, ET AL.**

**VS.**

**DEFENDANT 1 AND DEFENDANT 2 #87515**

On Supervisory Writ to the 16th Judicial District Court, Parish of St. Martin

**ON REHEARING**

**Genovese, J., dissents and assigns the following reasons:**

I dissent from the rehearing majority for the reasons assigned by the majority on the original opinion. *See Bienvenu v. Defendant 1*, 23-01194 (La. 3/22/24), 382 So.3d 38. Additionally, I am compelled to point out the effect of this court's ruling on rehearing. This ruling on rehearing elevates a legislative act over a constitutional right and obliterates the vested right of accrued prescription, which has been precedent in our law for decades.

It is hornbook law that the Louisiana constitution is the supreme law of the state of Louisiana, and not legislative action. *See Louisiana Fed'n of Tchrs. v. State*, 13-0120, p. 22 (La. 5/7/13), 118 So.3d 1033, 1048-49 (citations omitted)("[T]he constitution is the supreme law of this state to which all legislative instruments must yield . . . . When a legislative instrument conflicts with a constitutional provision, the legislative instrument must fall."). Louisiana Constitutional Article I, § 2, states: "No person shall be deprived of life, liberty, or property, except by due process of law." No legislative act supersedes the constitution. It is undisputed that plaintiffs'

claims have prescribed and have been prescribed for over a half century. The issue is retroactivity. Can the legislature go back in time and resurrect a prescribed claim involving a vested right?

No. The definite nature of accrued prescription has been repeatedly recognized in our jurisprudence that under civilian principles, prescriptive periods that have accrued act to extinguish the civil obligation to which they apply. *Denoux v. Vessel Mgmt. Servs., Inc.*, 07-2143, p. 7 (La. 5/21/08), 983 So.2d 84, 89 (citing *Louisiana Health Servs. and Indem. Co. v. McNamara*, 561 So.2d 712, 718 (La. 1990))( "Civilian prescriptive periods act to extinguish the civil obligation to which they apply."). Once a claim prescribes, the debt is extinguished, and a defendant's right to plead prescription is unconditional or vested. Thus, when a party acquires the right to plead the defense of accrued prescription, his right becomes a vested property right protected by constitutional due process guarantees. *See Falgout v. Dealers Truck Equip. Co.*, 98-3510, p. 12 (La. 10/19/99), 748 So.2d 399, 407 (citation omitted)("When a party acquires a right, either to sue for a cause of action **or to defend himself against one**, that right becomes a vested property right and is protected by due process guarantees.")(emphasis added); *see also, M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07-2371, p. 25 (La. 7/1/08), 998 So.2d 16, 33; and, *Bourgeois v. A.P. Green Indus., Inc.*, 00-1528, p. 9 (La. 4/3/01), 783 So.2d 1251, 1259.

It is without question that the acts alleged herein, if proven, are horrific, despicable, and immoral. But, we are not dealing with an emotional and moral issue, we are restricted to dealing with a legal issue — that issue being whether the vested right of accrued prescription has been taken away without due process of law.

The majority opinion on rehearing claims that defendants have not proven a violation of due process. What more is needed? The defendants herein, by law, were freed of their legal obligation over fifty years ago. Their property rights, by law, were secure. Now, over a half century later, their property rights are exposed and

2

ripe for seizure of an extinguished legal obligation. In the case at bar, all of the witnesses herein are likely deceased; pertinent exhibits and documents are likely unavailable; and, defendants are defenseless. Is that not tantamount to a violation of due process under our state and federal constitutions? Where does it end? Is accrued prescription, a vested right, now imprescriptible?

I am very concerned about this majority ruling on rehearing granting unbridled authority to the legislature to enact legislation which supersedes and tramples our constitution. I find such action to be a violation of the separation of powers doctrine. That is a slippery slope indeed.

The majority opinion on rehearing claims that its decision is limited to the facts herein and does not "open the floodgates." Really? I beg to differ. What is to stop the legislature from pursuing other causes it deems appropriate and passing legislation in derogation of our constitutional rights? Where does it end? Where are the limitations within the majority's rehearing opinion that bridle the legislature from pursuing this course of action relative to any other issue it deems appropriate? There are none. There is much more to this case than meets the eye. I fear the fallout.

I wish to be clear that this dissent and the prior majority decision are solely and strictly restricted to the legal issues and ramifications therefrom, and in no way condone the despicable and horrific acts alleged herein (once proven). I write solely to address the legal issues and nothing further.

I find the majority opinion on rehearing sets a bad precedent and has the potential of opening Pandora's box. Thus, I dissent from the majority opinion on rehearing in this case.

3

# SUPREME COURT OF LOUISIANA

## No. 2023-CC-01194

## DOUGLAS BIENVENU, ET AL.

## VS.

## DEFENDANT 1 AND DEFENDANT 2 #87184

## C/W

## JOHN DOE, ET AL.

## VS.

## DEFENDANT 1 AND DEFENDANT 2 #87515

*On Supervisory Writ to the 16th Judicial District Court, Parish of St. Martin*

## ON REHEARING

**GRIFFIN, J., concurs in the result and assigns reasons.**

Litigants should be afforded their day in court and the horrific nature of the allegations favor allowing the opportunity to present them to a trier of fact. However, the narrow issue before this Court is whether the legislature has the authority to revive a prescribed cause of action[1] – determination of which bears consequences further reaching than the underlying matter itself.

"No person shall be deprived of life, liberty, or property, except by due process of law." La. Const. art. I, § 2.  Absent from this provision is any mention of "vested rights."  Such references, existing in prior iterations, were removed in the framing of the Louisiana Constitution of 1974.[2]  *See Doe v. Society of the Roman*

---

[1] That legislation passes unanimously in no way inoculates it from judicial review of its constitutionality.  Nor may legislation statutorily abrogate judicial interpretation of the Louisiana Constitution.  *See* La. Const. art. II, § 2; *Marbury v. Madison*, 5 U.S. 137, 177-78, 1 Cranch 87, 111 (1803).

[2] The term "vested right" is merely descriptive: a right which has been acquired.  *See Falgout v. Dealers Truck Equipment Co.*, 98-3150, p. 12 (La. 10/19/99), 748 So.2d 399, 407 ("When a party acquires a right, either to sue for a cause of action or to defend himself against one [by asserting prescription], that right becomes a vested property right and is protected by the due process guarantees.").  Under the current state constitution, it is not a *sui generis* right that necessarily

*Catholic Church of Diocese of Lafayette*, 22-0120, pp. 13-14 (La.App. 3 Cir. 2/26/24), --- So.3d ---, 2023 WL 10510178 (citing Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, Vol. 6, at 1003). Further scrutiny reveals the delegates to the Constitutional Convention were critical of *Lochner*-era doctrine associated with absolute economic due process rights.[3] The plain language of La. Const. art. I, § 2 – informed by the context of its framing – consequently demonstrates *Burmaster v. Plaquemines Parish Govt.* was incorrectly decided. *See Bergeron v. Richardson*, 20-1409, p. 9 (La. 6/30/21), 320 So.3d 1109, 1116 (civilian tradition dictates Louisiana courts must begin legal analysis by examining the positive law).

---

warrants absolute protection in and of itself. Further, under the plain language of Article IV, § 15 of the Louisiana Constitution of 1921, vested rights were not subject to absolute protection: "[N]or shall vested rights be divested, *unless for purposes of public utility, and for just and adequate compensation previously paid.*" [Emphasis added.]

[3] Delegate Burson stated:

> I am in favor of having a due process clause in our State Constitution, for a lot of reasons. I share Mr. Perez's concern about exactly what substantive and procedural due process means. If any of you are familiar with the constitutional history of this country, you know that the United States Supreme Court in the 1910-1939 era … went in and abrogated a lot of state legislation, such as child labor laws and other humane laws, on the grounds of substantive due process. The history of substantive due process as a constitutional principle in United States jurisprudence is very dubious, and I just wonder what we mean when we use that term here. I don't think we mean that, but I don't know what we mean.

> * * *

> I think due process means … substantive due process if that has a meaning insofar as the United States Constitution guarantees it to us. I think before we start using new words to define new rights that nobody else has ever defined, that somebody owes it to us to get up here and tell us what they mean.

> * * *

> I would like to conclude by suggesting to you, that before we sit down here and adopt a lot of rights that we don't know what they mean, and a lot of rights that no other state has in its constitution, and a lot of rights that go far beyond the rights guaranteed in the United States Constitution, that we should consider whether or not in our hearts, that this is what the people who elected us sent us here to do.

Records of the Louisiana Constitutional Convention of 1973: Convention Transcripts, Vol. 6, at 1008.

"The identification and protection of fundamental rights is an enduring part of the judicial duty to interpret the Constitution." *Obergefell v. Hodges*, 576 U.S. 644, 663 (2015), 135 S.Ct. 2584, 2598. Fundamental rights under state law are primarily derived from those enumerated in Article I of the Louisiana Constitution – some of which are given absolute protection as expressly stated in their framing. *See*, *e.g.*, La. Const. art. I, § 3 ("No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations."); *Albright v. Southern Trace Country Club of Shreveport, Inc.*, 03-3414, p. 20 (La. 7/6/04), 879 So.2d 121, 133. Under any metric, the right to assert the defense of prescription is not fundamental.[4] Our state's substantive due process analysis is similar to federal substantive due process analysis, the latter of which has no absolute protection for vested property rights. *See Progressive Sec. Ins. Co. v. Foster*, 97-2985, p. 22 (La. 4/23/98), 711 So.2d 675, 688. I therefore agree with the majority that the appropriate test in this case is whether the legislation is rationally related to a legitimate government interest – a bar which the law under consideration meets.

Our decision today forges a double-edged sword. The legislature's ability to retroactively abolish the right to assert the defense of prescription potentially empowers it to retroactively abolish a litigant's cause of action despite the existence of a cognizable injury. Whether the latter is constitutionally permissible requires a separate inquiry with unique considerations. But where no fundamental right is implicated, a citizen's protection against divestment of their ability to bring suit may exist only at the ballot box. *See* La. Const. art. III, § 1(A); *Krielow v. Louisiana*

---

[4] I respectfully decline the Attorney General's invitation to adopt the test articulated in *Washington v. Glucksberg*, 521 U.S. 702, 117 S.Ct. 2258 (1997), requiring fundamental rights must be deeply rooted in our history and tradition. "If rights were defined by who exercised them in the past, then received practices could serve as their own continued justification and new groups could not invoke rights once denied." *Obergefell*, 576 U.S. at 671, 135 S.Ct. at 2602; *see also Michael H. v. Gerald D.*, 491 U.S. 110, 137, 109 S.Ct. 2333, 2349 (Brennan, J., dissenting) ("Apparently oblivious to the fact that this concept can be as malleable and as elusive as 'liberty' itself, the plurality pretends that tradition places a discernable border around the Constitution.").

*Dept. of Agric. & Forestry*, 13-1106, pp. 4-5 (La. 10/15/13), 125 So.3d 384, 388 (only our state constitution limits "the otherwise plenary power of the people exercised through the legislature").